[Cite as *State v. Belanger*, 190 Ohio App.3d 377, 2010-Ohio-5407.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

THE STATE OF OHIO,                                    CASE NO. 1-09-65

    APPELLEE,

  v.

BELANGER,                                          O P I N I O N

    APPELLANT.


**Appeal from Lima Municipal Court
Trial Court No. 09 CRB02485**

**Judgment Reversed and Cause Remanded**

**Date of Decision:  November 8, 2010**


APPEARANCES:

    David M. Geiger, for appellee.

    Clayton P. Osting, for appellant.



    WILLAMOWSKI, Presiding Judge.

{¶ 1} Defendant-appellant, Philip T. Belanger, brings this appeal from the judgment of the Lima Municipal Court finding him guilty of domestic violence, in violation of R.C. 2919.25(A). For the reasons set forth below, the judgment is reversed.

{¶ 2} On August 5, 2009, a complaint was filed in the trial court alleging that Belanger had committed domestic violence against his live-in girlfriend on August 4, 2009. Belanger entered a plea of not guilty to the complaint. A jury trial was held on October 29, 2009. The jury returned a verdict of guilty. On November 23, 2009, Belanger was sentenced to 180 days in jail with 150 days suspended, a $250 fine, and two years of community control. Belanger now appeals from his conviction and raises the following assignments of error.

First Assignment of Error

The trial court erred to the prejudice of [Belanger] by denying his motion for a jury instruction on self defense which is an affirmative defense to the crime charged. In addition, the failure of the trial court to give this proper charge denies [Belanger] federal and state due process.

Second Assignment of Error

The trial court erred to the prejudice of [Belanger] by denying his motion for a continuance.

Third Assignment of Error

The trial court erred to the prejudice of [Belanger] by denying him the right to present the evidence of witnesses as to his character, demeanor, disposition, etc.

{¶ 3} Belanger's first assignment of error alleges that the trial court erred by not instructing the jury on the affirmative defense of self-defense. "In charging the jury, the court must state to it all matters of law necessary for the information of the jury in giving its verdict." R.C. 2945.11. Parties may request that the trial court instruct the jury on a particular matter. Crim.R. 30(A). However, a trial court may omit any requested instructions that are not correct statements of the law and applicable to the case before it. *State v. Scott* (1986), 26 Ohio St.3d 92, 497 N.E.2d 55.

> A trial court is not required to instruct the jury on self-defense in every case where it is attempted to be presented. The defendant must first present sufficient evidence at trial to warrant such an instruction. In *State v. Robinson* (1976), 47 Ohio St.2d 103, 351 N.E.2d 88, the court stated * * *:
>
> "* * * In order to raise an affirmative defense, which is now statutorily defined as either 'a defense expressly designated as affirmative' or 'a defense involving an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence' (R.C. Section 2901.04[C]), evidence of a nature and quality sufficient to raise the issue must be introduced, from whatever source the evidence may come. The procedural steps to be taken by the trial court are well stated in *State v. Millett* [(1971 Me.), 273 A.2d 508]:
>
> "'* * * When such evidence is forthcoming the trial court must first, viewing that evidence in the light most favorable to the defendant, determine whether or not it is adequate to raise the self-defense issue, and, if believed, would under the legal tests applied to a claim of self-defense permit a reasonable doubt as to guilt, stemming from that claim to arise. * * * *If the evidence adduced, so viewed, is legally insufficient to raise the issue, the trial court will have no occasion or obligation to instruct the jury on the elements essential*

*to a valid claim of self-defense, but rather will remove the issue of self-defense from jury consideration.'"* (Emphasis added.)

*Bucyrus v. Fawley* (1988), 50 Ohio App.3d 25, 26-27, 552 N.E.2d 676. The requested instruction for self-defense is as follows:

> SELF-DEFENSE. The defendant claims to have acted in self-defense. To establish that he/she was justified in using force not likely to cause death or great bodily harm, the defendant must prove by the greater weight of the evidence that
>
> (A)  he/she was not at fault in creating the situation giving rise to (*describe the event in which the use of non-deadly force occurred*); and
>
> (B)  he/she had reasonable grounds to believe and an honest belief, even if mistaken that he/she was in (imminent) (immediate) danger of bodily harm.

4 Ohio Jury Instructions (2010), Section 421.21.

{¶ 4}  To establish a claim of self-defense, a defendant must show that (1) he was not at fault in creating the situation giving rise to the event, (2) he had a bona fide belief that he was in imminent danger of bodily harm, and (3) he did not violate any duty to retreat or avoid the danger. *State v. Melchior* (1978), 56 Ohio St.2d 15, 381 N.E.2d 195. See also *State v. Thomas* (1997), 77 Ohio St.3d 323, 673 N.E.2d 1339; *State v. Williford* (1990), 49 Ohio St.3d 247, 551 N.E.2d 1279; *State v. Jackson* (1986), 22 Ohio St.3d 281, 490 N.E.2d 893; and *State v. Robbins* (1979), 58 Ohio St.2d 74, 388 N.E.2d 755. The degree of force one may use to defend oneself depends upon what is reasonably necessary to protect that individual from the imminent use of unlawful force. *Akron v. Dokes* (1986), 31

Ohio App.3d 24, 507 N.E.2d 1158. In instances where less than deadly force is used, the defendant need only show a fear of bodily harm, not of death or great bodily harm. *State v. Perez* (1991), 72 Ohio App.3d 468, 594 N.E.2d 1041. "Since there is no duty to retreat in a case involving nondeadly force, the accused must simply satisfy the two remaining elements of a valid self-defense claim, to wit: he was not at fault in creating the situation, and he had a genuine belief that he was in imminent danger of bodily harm." *State v. Johnson*, 11th Dist. No. 2005-L-103, 2006-Ohio-2380, ¶21. Since self-defense is an affirmative defense, the defendant bears the burden of proving it by a preponderance of the evidence. *Williford*. A defendant has met his burden of production on the defense when he introduces sufficient evidence, which, if believed, would raise a question in the mind of a reasonable juror concerning the issue. *Robbins*. "The inquiry into whether a defendant has introduced sufficient evidence to raise an affirmative defense under R.C. 2901.05 is a question of law." *Johnson* at ¶24. Thus, an appellate court uses a de novo standard of review on appeal. Id.

{¶ 5} In this case, the victim testified that the two were involved in a verbal dispute and that Belanger had grabbed her by the neck. She testified that Belanger then struck her on the left side of the face, causing her to fall and strike her right eye. Belanger denied these accusations. He admits that they were having an argument. He testified that the victim turned and struck him in his injured shoulder, causing him pain. He further testified that he pushed the victim

away, causing her to fall, because he did not want to be struck again. Belanger also provided an explanation about how the marks on the victim's neck could have occurred. Since Belanger used less than deadly force, he had no duty to retreat and only needed to show that he was not the aggressor and that he feared further bodily harm.

{¶ 6} In determining whether a jury instruction on an affirmative defense should be given, the court must view the evidence in a light most favorable to the defendant. The question of credibility is not to be considered. Belanger testified that the victim was the aggressor, i.e., that she struck him first, and that he was in fear of being struck again. Although the state argues that his testimony was not credible, that would be an issue for the jury to determine. Belanger met his burden of production when his testimony, if believed, would raise the question of self-defense in the mind of a reasonable juror. Thus, the first assignment of error is sustained.

{¶ 7} Having found prejudicial error in the denial of a self-defense instruction to the jury, the second and third assignments of error are moot. Thus, they will not be addressed.

{¶ 8} The judgment of the Lima Municipal Court is reversed, and the matter is remanded for further proceedings.

Judgment reversed
and cause remanded.

ROGERS, J., concurs.

SHAW, J., dissents.

_____

**SHAW, Judge, dissenting.**

{¶ 9}  I respectfully dissent from the majority decision to reverse this case based on the trial court's failure to instruct the jury on self-defense.  The majority correctly states that a trial court may omit any requested instructions that are not correct statements of the law and applicable to the case before it.  *State v. Scott* (1986), 26 Ohio St.3d 92.  Further, as noted by the majority, "'[i]n order * * * to successfully raise an affirmative defense * * * evidence of a nature and quality sufficient to raise the issue must be introduced, from whatever source the evidence may come.'"  *State v. Melchior* (1978), 56 Ohio St.2d 15, 20, quoting *State v. Robinson* (1976), 47 Ohio St.2d 103, 111-112, 351 N.E.2d 88.  The court in *Melchior* also stated that "[e]vidence is sufficient where a reasonable doubt of guilt has arisen based upon a claim of self-defense. * * * If the evidence generates only *a mere speculation or possible doubt*, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted." (Emphasis added.)  Id. at 20.

{¶ 10} At trial, Belanger requested an instruction on the affirmative defense of self-defense, which required him to show, inter alia, that he had a bona fide belief that he was in *imminent* danger of bodily harm.  See *Melchior*, 56 Ohio

St.2d at 20-21. The majority found that Belanger testified that the victim hit him in his injured shoulder, causing him pain, during an argument the two were having. The majority then states that Belanger "testified that he pushed the victim away, causing her to fall, *because he did not want to be struck again*" and that he provided an explanation about how the marks on the victim's neck could have occurred. Thus, the majority concludes that Belanger met his burden of production to raise the question of self-defense, which would warrant such an instruction to the jury. I disagree.

{¶ 11} Contrary to the majority's view of the evidence, a review of the record reveals that the only testimony Belanger gave regarding a bona fide belief that he was in *imminent* danger of bodily harm was during his direct examination by defense counsel:

> Q: And did you, uh, were you concerned if she hit you a second time that you'd be injured?
>
> A: More than likely, but, you know.

No question was asked and no testimony was given by Belanger that relayed that he did not want to be struck again, that he feared that he would be struck again, or in any other way that he had a bona fide belief that he was in *imminent* danger of bodily harm. The record is devoid of any evidence that the victim made any further movements towards Belanger or that he even had a belief that she was going to harm him again. The question posed by defense counsel was a

hypothetical: "Were you concerned that *if* she hit you a second time you would be injured?" The question was not "were you concerned that she would hit you a second time?"

{¶ 12} More importantly, Belanger never testified that he knowingly acted to defend himself and in fact, seemed to carefully avoid any implication of deliberate conduct on his part. On the contrary, Belanger's testimony about what happened was more akin to a defense of accident, i.e., he seemed to emphasize that he did *not* "knowingly" cause or attempt to cause physical harm to anyone.

{¶ 13} Specifically, Belanger testified that he was trying to explain to the victim, his live-in girlfriend, that he was concerned for her safety due to an incident that happened earlier that day and that someone might harm her because of her relationship to him. The argument became more heated, according to Belanger, because the victim repeatedly told him that she did not care. Belanger explained that he "was wanting to talk to her and then [he] got hit" by the victim in his right shoulder, which hurt because of a previous injury he had. Belanger further stated:

> It happened so quick, the only thing I can think of is that I pushed her like that and when she was in her stocking feet on a linoleum floor that's when she fell, her feet had kicked mine out from me and we landed up on top of each other. All I could remember her saying is, "ow, my eye," so I don't know if she hit it on the counter, the drawer that was open or on the floor.

> * * *

The fridge stopped me from falling and, then, I came back up, it just happened so quick. I pushed her, my hand may have gone up, caught her neck but she went down, her feet kicked my feet out and we both landed on the floor on top of each other.

{¶ 14} Nothing in this testimony indicated that Belanger believed that he was knowingly defending himself from imminent bodily harm rather than merely reacting to the harm previously inflicted upon him and accidentally falling on the victim in some kind of mutual pushing incident. Thus, I do not find that Belanger presented sufficient evidence to create a reasonable doubt of guilt based upon any of the essential elements necessary for a claim of self-defense. At most, his testimony generated only *a mere speculation or possible doubt*. As previously noted, such evidence is insufficient to raise or establish this affirmative defense.

{¶ 15} For all of these reasons, I would conclude that the trial court did not err in overruling Belanger's request to submit this issue to the jury. Accordingly, I would affirm the judgment of the trial court.