[Cite as *State v. Ridley*, 2022-Ohio-2561.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,                  :          APPEAL NO. C-210458
                                           TRIAL NO. B-2004766
    Plaintiff-Appellee,         :

  vs.                           :          *O P I N I O N.*

NATALIE RIDLEY,                 :

    Defendant-Appellant.        :


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  July 27, 2022


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Sarah E. Nelson*, Assistant Public Defender, for Defendant-Appellant.

**WINKLER, Judge**.

{¶1} Following a bench trial, defendant-appellant Natalie Ridley was convicted of patient abuse under R.C. 2903.34(A)(1). She presents three assignments of error. We find no merit in her first two assignments of error, in which she contends that the trial court's guilty finding was improper. Her third assignment of error, in which she challenges one of the conditions of her community-control sanction, has merit. Consequently, we sustain her third assignment of error, and remand the cause to the trial court to modify that condition.

### *Factual Background*

{¶2} The record shows that on June 21, 2020, Ridley was working as a state tested nursing assistant ("STNA") at Burlington House Nursing Home, a lock-down facility for patients with dementia and Alzheimer's disease. She was tending to Donald Knueven, a resident of the facility. He had suffered a stroke, which had led to dementia while in his late 50s. Unlike most of the residents, he was not frail and elderly. Witnesses described him as being between six-feet one inches to six-feet four inches tall and weighing from 170 to 190 pounds. One of nurses testified that he was self-sufficient, mobile, and able to do more for himself than other residents.

{¶3} On that day, Jonisha Bradley was also working as a STNA. At about 5:00 a.m., she heard a "bunch of yelling," and she went into the hall to see what was happening. She saw Ridley, who appeared to be upset. Bradley then saw Knueven come out of his room. She noticed that he and Ridley both had blood on them. Ridley called Knueven a "wife beater," and said, "Don't put your fucking hands on me." Bradley described Ridley's demeanor as "aggressive" and "upset." She added that, "She was mad. She was angry." Finally, Bradley testified that as an STNA, she was trained to "walk away" when patients become aggressive.

{¶4} Nita Elu was the director of nursing at Burlington House. On the morning of the incident, she received a call at home from a woman who screamed, "This motherfucker hit me. Ain't no motherfucker going to hit me. Don't no man hit me." At first, Elu was not even sure to whom she was speaking. Ridley identified herself after she had calmed down, and said, "Donald. That motherfucker hit me. Don't no man hit me." Elu told Ridley that "[s]he was going to have to leave the building." When Elu asked Ridley what happened, Ridley said, "He wanted me to close his motherfuckin' door, but I told him to close his own motherfuckin' door." She added, "I pushed him so hard that he hit his head on the nightstand. He fell and hit his head on the nightstand."

{¶5} Elu immediately went to Burlington House, where she saw nurses tending to "skin tears" on Knueven's arms, forehead, neck, and the back of his head. In his room, she saw blood on the inside of the door, "like as if somebody had pushed the door open and hit somebody in the head." She testified that the blood on the door was about the same height as Knueven's head when standing, and that she observed a mark on his forehead that was consistent with the blood on the door. When asked if there were incidents where Knueven had been violent or aggressive, Elu said there had been "a couple of incidents with other residents," but she knew of none involving staff members. She further testified that staff members are trained to walk away when a resident becomes aggressive.

{¶6} Catarena Houck, the assistant director of nursing, went to Burlington House after receiving a call from Elu. Upon her arrival, she met with Ridley who was outside the facility in her car. She said that Ridley appeared calm at that point and did not say much. Houck testified that an incident report was created because of the report that Ridley had pushed Knueven.

{¶7} When Houck went inside, she saw injuries to Knueven's forehead, right arm, neck, and cheek. She testified that he was sent to the hospital to ensure that he

3

did not have a head injury. Houck confirmed that employees are trained on how to respond to aggressive patients. She said employees are told to "step away" for a few minutes if patients are not causing harm to anyone else, and after a few minutes, "reapproach them."

{¶8} Springfield Township Police Officer Kevin Woodruff was dispatched to investigate the incident between Knueven and Ridley. He spoke with Knueven and Ridley, as well as other staff members. He said that Knueven was able to speak about the incident and that he observed Knueven's injuries.

{¶9} Ridley told Officer Woodruff that a patient had attacked her. She said that Knueven grabbed her by the arm and pulled her into his room. In response, she pushed the door, knocking him backwards. He then grabbed her by the hair, so she pushed him again, which caused him to fall back and hit his head. In response to the officer's question, Ridley confirmed that she told Knueven, "You're going to die in here, you fucking woman beater."

{¶10} The officer said that Knueven had "deep lacerations "on his right arm, lacerations on his face and neck, and contusions on his face and head. Ridley had minor injuries. She had a minor scratch on her arm, and a "wound" on her upper lip, which was so minor, Officer Woodruff said he would not even call it a contusion. Additionally, her blouse had a small tear on the shoulder.

{¶11} Officer Woodruff testified that Ridley's report of what happened was not consistent with the injuries he observed on Knueven, the injuries he observed on Ridley, or the statements from other staff members. He also clarified that Ridley did not mention hitting Knueven with the door when he first spoke to her. That information initially came from another staff member.

{¶12} Officer Woodruff also interviewed Ridley at the police station a week later. The officer confirmed that Ridley's statements at the police station were not consistent with her original statement the day of the incident. But when he was asked

on cross-examination whether in both statements "she was consistent on these facts – she was pulled into the room; she was on the ground; she was punched * * *," he replied affirmatively.

**{¶13}** After hearing the evidence, the trial court rejected Ridley's claim of self-defense and found her guilty of patient abuse. The court sentenced her to one year of community control with several conditions. One of those conditions was a lifetime ban preventing her from working in nursing homes. This appeal followed.

### *Self-Defense*

**{¶14}** In her first assignment of error, Ridley contends that the trial court erred in applying Ohio's self-defense law. She argues that the court "misapplied the burden-shifting scheme" under former R.C. 2901.05(B) when it "failed to attribute" evidence that she was not the first aggressor after accepting her statements that Knueven had struck her as credible. This assignment of error is not well taken.

**{¶15}** The elements of self-defense in a case involving nondeadly force are: (1) the defendant was not at fault in creating the altercation; (2) the defendant had reasonable grounds to believe that that she was in imminent danger of bodily harm; and (3) the only way to protect herself from the danger was using force and she did not use more force than was reasonably necessary to defend herself against the imminent danger of bodily harm. *State v. Porter*, 1st Dist. Hamilton No. C-200459, 2021-Ohio-3232, ¶ 12; *State v. Williams*, 1st Dist. Hamilton No. C-190380, 2020-Ohio-5245, ¶ 11. The elements of self-defense are cumulative, and a defendant's claim of self-defense fails if any one of the elements is not present. *State v. Gatewood*, 1st Dist. Hamilton No. C-190654, 2021-Ohio-3325, ¶ 72; *State v. Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, ¶ 48.

**{¶16}** In 2018, the Ohio legislature modified R.C. 2901.05 to change the treatment for the use of force in self-defense and to add a new burden-shifting provision. *Williams* at ¶ 6-7; *State v. Parrish*, 1st Dist. Hamilton No. C-190379, 2020-Ohio-4807, ¶ 7. We note that the statue was amended again in 2021, but that amendment did not substantively change the applicable provisions. We apply the statute in effect at the time of the offense.

**{¶17}** Under the applicable former version of R.C. 2905.01(B)(1), the defendant had the initial burden of production to present evidence that "tends to support" a claim of self-defense. *Porter* at ¶ 12; *Williams* at ¶ 7. While the "tends to support" language was a "new feature" in the 2018 amendment of the statute, that phrase did not change the defendant's burden of production. *Williams* at ¶ 8; *Parrish* at ¶ 13-14. The defendant must produce evidence that when viewed in the light most favorable to the defendant, is sufficient to create a reasonable doubt as to guilt. *Williams* at ¶ 9; *Parrish* at ¶ 14, both citing *State v. Melchior*, 56 Ohio St.2d 15, 381 N.E.2d 195 (1978), paragraph one of the syllabus. "The question of credibility is not to be considered." *State v. Sullivan*, 11th Dist. Lake Nos. 2019-L-143 and 2019-L-144, 2020-Ohio-1439, ¶ 45, quoting *State v. Belanger*, 190 Ohio App.3d 377, 2010-Ohio-5407, 941 N.E.2d 1265, ¶ 6 (3d Dist.).

**{¶18}** The burden of going forward with evidence is met when evidence, if true, "would raise a question in the minds of reasonable jurors concerning the existence of such issue." *State v. Ralls*, 1st Dist. Hamilton No. C-210410, 2022-Ohio-2110, ¶ 7, quoting *Melchior* at paragraph one of the syllabus. The same standard applies when the court is the finder of fact. To meet the burden of production, the defendant must produce evidence that "when viewed in a light most favorable to the defendant is sufficient to cast a reasonable doubt as to guilt." *Parrish*, 1st Dist. Hamilton No. C-190379, 2020-Ohio-4807, at ¶ 14.

{**¶19**} Once the defendant met this burden of production, former R.C. 2901.05(B)(2) shifted the burden of persuasion to the prosecution. As a result, the prosecution does not assume the burden of persuasion until the defendant first meets his or her burden of production. *Ralls* at ¶ 7, quoting *Williams* at ¶ 7. The prosecution must produce evidence to disprove one of the elements of self-defense beyond a reasonable doubt. *Porter*, 1st Dist. Hamilton No. C-200459, 2021-Ohio-3232, at ¶ 13; *Williams*, 1st Dist. Hamilton No. C-190380, 2020-Ohio-5245, at ¶ 7. We review de novo whether the trial court applied the proper legal standard and whether evidence of self-defense was sufficient to shift the burden to the prosecution. *Williams* at ¶ 5.

{**¶20**} Ridley argues that if the trial court believed that Knueven had hit Ridley, then it had to find that she was not at fault in creating the situation. We disagree. None of the witnesses saw the altercation. The trial court discussed Elu's testimony that Ridley had told Elu that Knueven had hit her. It then stated, "Even finding that statement to be credible, there was absolutely no evidence of whether Mr. Knueven hit Ms. Ridley first, or Mr. Knueven hit her, Ms. Ridley after she admittedly pushed him." The court further stated, "The record is silent as to the sequence of events, which is significant; thus, the Court will not speculate on the sequence of events. The court must go off of the evidence presented in court." Finally, it concluded, "Here because the Defendant, Natalie Ridley [,] who's [sic] burden it is to prove some evidence of self-defense, failed in her burden, the Court finds that the self-defense claim fails."

{**¶21**} Ridley gave inconsistent accounts to Officer Woodruff. She first told him that Knueven tried to pull her into the room, and she pushed the door in on him, knocking him back. Then, she stated that Knueven was yelling, and she was trying to calm him down. They were in the doorway, and he pulled her into the room and punched her in the face. Then they were on the ground fighting. The trier of fact was entitled to consider these inconsistencies in determining whether Ridley had met her burden of production. Her initial account, together with Elu's testimony, supports the

7

trial court's determination that she did not meet her burden to show that she was not at fault in creating the situation.

**{¶22}** The record does not show that the trial court misapplied the burden-shifting provisions of former R.C. 2901.05(B). This court has stated, "In a bench trial, where the record contains no substantiation that the trial court applied the wrong standard, we may presume the regularity of the proceedings." *Williams*, 1st Dist. Hamilton No. C-190380, 2020-Ohio-5245, at ¶ 10. Consequently, we overrule Ridley's first assignment of error.

### *Manifest Weight*

**{¶23}** In her second assignment of error, Ridley contends that her conviction was against the manifest weight of the evidence. Ridley concedes that she pushed Knueven, but she argues that the weight of the evidence demonstrates that she acted in self-defense. This assignment of error is not well taken.

**{¶24}** Ridley was convicted of patient abuse under R.C. 2903.34(A)(1). It provides, "No person who owns, operates, or administers, or who is an agent or employee of, a care facility shall * * * [c]ommit abuse against a resident or patient of the facility." R.C. 2903.33(B) states that abuse means "knowingly causing physical harm or recklessly causing serious physical harm to a person by physical contact with the person * * *."

**{¶25}** Basically, Ridley argues that her version of events was credible. But matters as to the credibility of evidence are for the trier of fact to decide. *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 116; *State v. Ojile*, 1st Dist. Hamilton Nos. C-110677 and C-110678, 2012-Ohio-6015, ¶ 56. Ridley's versions of events were inconsistent, Knueven's injuries were not consistent with her claim of self-defense, and some of her statements tended to show that she pushed Knueven in

anger rather than fear. A defendant is not entitled to a reversal on manifest-weight grounds merely because inconsistent evidence was presented at trial. The trier of fact is free to believe some, all, or none of any witnesses' testimony. *Gatewood*, 1st Dist. Hamilton No. C-190654, 2021-Ohio-3325, at ¶ 69.

{¶26} After reviewing the record, we cannot say that the trier of fact lost its way and created such a manifest miscarriage of justice that we must reverse Ridley's conviction and order a new trial. Therefore, the conviction was not against the manifest weight of the evidence. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *Porter*, 1st Dist. Hamilton No. C-200459, 2021-Ohio-3232, at ¶ 24. Consequently, we overrule Ridley's second assignment of error.

### *Conditions of Community Control*

{¶27} In her third assignment of error, Ridley contends that the trial court erred in imposing a lifetime ban on working in nursing homes as part of her sentence. She argues that a trial court is not authorized to impose an indefinite condition as part of a community-control sentence. This assignment of error has merit.

{¶28} Ridley did not object to the sentence on that basis, so we review for plain error. *See State v. Little*, 1st Dist. Hamilton No. C-180523, 2019-Ohio-4488, ¶ 13. The trial court has broad discretion to impose conditions of community control, although that discretion is not unlimited. *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 10-11; *Little* at ¶ 14-15. Under former R.C. 2929.17, involving nonresidential sanctions, the trial court could appropriately impose a ban on Ridley from working in a nursing home. *See Little* at ¶ 16-17; *State v. Jacobs*, 189 Ohio App.3d 283, 2010-Ohio-4010, 938 N.E.2d 79, ¶ 7-8 (8th Dist.).

{¶29} But former R.C. 2929.15(A) provided that "[t]he duration of all community control sanctions imposed under this section shall not exceed five years."

Consequently, the trial court did not have statutory authority to impose a lifetime ban preventing Ridley from working in a nursing home. *See Jacobs* at ¶ 8; *State v. Geiger*, 169 Ohio App.3d 374, 2006-Ohio-5642, 862 N.E.2d 914, ¶ 12 (3d Dist.).

{¶30} The state concedes the error. Because the lifetime ban was not statutorily authorized, the error rises to the level of plain error. Therefore, we sustain Ridley's third assignment of error, and we remand the cause to the trial court to modify that condition of community control. We affirm the trial court's judgment in all other respects.

Judgment affirmed in part, reversed in part, and cause remanded.


**MYERS, P.J.**, concurs.
**CROUSE, J.**, dissents.


**CROUSE, J.**, dissenting.

{¶31} Because I believe the trial court erred in failing to shift the burden of persuasion to the prosecution to disprove Ridley's self-defense claim, I must respectfully dissent.

{¶32} The trial court found that Ridley had failed to meet her burden of production that she was not at fault in creating the altercation. Specifically, the trial court found that "the record is silent" and "there is absolutely no evidence of" who hit whom first. I disagree.

{¶33} Officer Woodruff interviewed Ridley on the day of the incident. During direct examination, he testified, "[S]he gave me a statement that she was attacked by a patient." Regarding the sequence of events, Woodruff testified as follows:

A:     She said that she – that he attempted to pull her into the room –
       that he did pull her into the room, grabbed her by the – she pushed the
       door, knocking him backwards. He then grabbed her by the hair,

10

according to her, and then she pushed him again, and that's when he fell back and hit his head.

Q. Okay. So she testified to pushing him twice – or excuse me – she reported to you that she pushed him twice?

A. She pushed the door, and that pushed him the first time.

Q. Okay.

A. And then she pushed him again while – once she alleged he grabbed her by the hair.

{¶34} During cross-examination, Woodruff testified that he interviewed Ridley again one week later. He testified:

Q. She said that [Knueven] was yelling?

A. Yes

Q. Is that correct?

A. Hmm-hmm.

Q. And that she was trying to calm him down?

A. Yes.

Q. Okay. And she stated that she was basically in the doorway at that time?

A. Yes.

Q. Okay. And just next thing she knew, she was pulled down and pulled into the room.

A. Hmm-hmm.

* * *

Q. So she told you that she was on the ground at that time?

A. Yes.

Q. And that she was saying, "Stop, stop, stop."

A. I don't recall.

Q.      And she said that she was punched and pulled, she was being yanked on?

A.      Yes.

Q.      Okay. And she said that she was yelling for help?

A.      I don't recall that either.

\* \* \*

Q.      So I'm looking at your 527, your investigation report –

A.      Yes.

Q.      -- that you generated on June 21st, which was the day of this alleged incident here. And she told you that Donald Knueven physically pulled her into the room?

A.      Yes.

Q.      And then on the day – seven days later when she came in, she said that she – he pulled me down – pulled me down, like I said into the room?

A.      Hmm-Hmm.

\* \* \*

Q.      Okay. But the statement I just said was not inconsistent?

A.      The statement of her being – of her hand being –

Q.      Pulled, pulled into the room?

A.      That's correct.

Q.      Okay. She also said that he was yelling at her –

A.      Yes.

\* \* \*

Q.      But overall, between June 21st and June 28th, on two separate days, 7 days apart, she was consistent on these facts – she was pulled into the room; she was on the ground; she was punched; okay?

A.     Yes.

Q.     And then she fought – fought her way out?

A.     Yes.

**{¶35}** Although the majority contends that Ridley's statements to Woodruff were inconsistent, Ridley's counsel established through cross-examination that Ridley was consistent that Knueven started the affray by pulling her into his room.

**{¶36}** Woodruff also testified that he observed a scratch on Ridley's arm, a minor wound on her upper lip, and noticed that her blouse had a small tear on the shoulder.   In addition, Jonisha Bradley, another STNA who was working at the time of the incident, testified that she heard Ridley yell, "Don't put your fucking hands on me."

**{¶37}** According to R.C. 2901.05(B)(1), if, at the trial, "there is evidence presented that tends to support that the [defendant] used the force in self-defense," then the burden shifts to the prosecution to disprove beyond a reasonable doubt that the defendant acted in self-defense.

**{¶38}** In order to meet her burden of production, Ridley had to "adduce evidence from whatever source, that when viewed in the light most favorable to [her], is sufficient to cast a reasonable doubt as to guilt."  (Emphasis added.)  *State v. Parrish*, 1st Dist. Hamilton No. C-190379, 2020-Ohio-4807, ¶ 14, citing *State v. Melchior*, 56 Ohio St.2d 15, 381 N.E.2d 195 (1978), paragraph one of the syllabus.

**{¶39}** The majority states that because Ridley gave inconsistent statements, the trial court "was entitled to consider these inconsistencies in determining whether Ridley had met her burden of production."   However, Officer Woodruff agreed on cross-examination that Ridley was consistent on the fact that Knueven pulled her into

13

the room. Perhaps there were some slight inconsistencies about what happened after that, but the issue is, who started the affray? Ridley was consistent in that regard.[1]

**{¶40}** Credibility is not an issue in determining whether a defendant has met her burden of production. *See State v. Sullivan*, 11th Dist. Lake Nos. 2019-L-143 and 2019-L-144, 2020-Ohio-1439, ¶ 45, citing *State v. Belanger*, 190 Ohio App.3d 377, 2010-Ohio-5407, 941 N.E.2d 1265, ¶ 6 (3d Dist.). Thus, while inconsistencies in Ridley's statements about what happened after she was pulled into Knueven's room are relevant in determining whether the prosecution met its burden of persuasion, they are not relevant in determining whether Ridley met her burden of production. *See, e.g.*, *Parrish* at ¶ 15-16 (holding that the burden shifted to the prosecution despite the fact that Parrish did not testify and there was conflicting testimony from Parrish's husband and a neighbor as to whether Parrish was the first aggressor); *State v. Davidson-Dixon*, 2021-Ohio-1485, 170 N.E.3d 557, ¶ 20 (8th Dist.), citing *State v. Stephens*, 2016-Ohio-384, 59 N.E.3d 612, ¶ 19 (8th Dist.) ("If there is conflicting evidence on the issue of self-defense, the instruction must be given to the jury.").

**{¶41}** A defendant can meet her burden of production by producing evidence from whatever source. I believe that Ridley did that in this case through her cross-examination of Woodruff.

**{¶42}** Thus, I would find that Ridley "went forward with evidence 'of a nature and quality sufficient to raise the defense' of self-defense." *See Parrish*, 1st Dist. Hamilton No. C-190379, 2020-Ohio-4807, at ¶ 16, quoting *Melchior*, 56 Ohio St.2d 15, 381 N.E.2d 195, at paragraph two of the syllabus. This evidence established what

---

[1] It also cannot reasonably be argued that Ridley's unprofessional remarks to Knueven, when she "told him to close his own motherfucking door," created the situation and justified Knueven grabbing her and pulling her into his room. It is well-established that "words alone 'will not constitute sufficient provocation to incite the use of force in most situations.'" *State v. Murray*, 7th Dist. Mahoning No. 18 MA 0031, 2019-Ohio-5459, ¶ 32, quoting *State v. Teal*, 2017-Ohio-7202, 95 N.E.3d 1095, ¶ 53 (6th Dist.).

the trial court and the majority contend was lacking—the sequence of events, i.e., that Ridley was not at fault in creating the situation.

{¶43} Woodruff's testimony also showed that Ridley reasonably believed that she needed to use some force to defend herself against Knueven after he yelled and pulled her into his room. Lastly, the force used by Ridley was not likely to cause death or great bodily harm.

{¶44} Therefore, because there was sufficient evidence presented that tended to support that Ridley used force in self-defense, the burden should have shifted to the prosecution to disprove self-defense beyond a reasonable doubt. Whether she would have prevailed in her self-defense claim after the burden shifted to the prosecution is not for this court to decide.

{¶45} I am concerned that the majority's holding will make it virtually impossible for a defendant claiming self-defense to meet her burden of production if the defendant's testimony and/or statements are in any way inconsistent. The majority opinion does not view the evidence in the light most favorable to the defendant, as the law requires.

{¶46} Because I believe the trial court should have shifted the burden of persuasion to the prosecution to disprove self-defense beyond a reasonable doubt, I would sustain Ridley's first assignment of error and remand the cause to the trial court for further proceedings. *See Parrish*, 1st Dist. Hamilton No. C-190379, 2020-Ohio-4807, at ¶ 22 (because the case was tried to the bench, the court remanded the case for the trial court to decide, based on the evidence presented at the first trial, whether the state proved beyond a reasonable doubt that the defendant did not use the admitted force in self-defense, or to retry the case, if the trial court deemed it necessary).

{¶47} Accordingly, I respectfully dissent.


Please note:

15

The court has recorded its own entry on the date of the release of this opinion.