[Cite as *State v. Fields*, 2025-Ohio-2248.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240505 |
| | | TRIAL NO. 24/CRB/790 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *JUDGMENT ENTRY* |
| HYDEIA FIELDS, | : | |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, the briefs, and arguments.

The judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed 100% to defendant-appellant Fields.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 6/27/2025 per order of the court.**

**By:**_____
        **Administrative Judge**

[Cite as *State v. Fields*, 2025-Ohio-2248.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240505 |
| | | TRIAL NO. 24/CRB/790 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N* |
| HYDEIA FIELDS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: June 27, 2025

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Dahkota Parish*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffmann*, Assistant Public Defender, for Defendant-Appellant.

**KINSLEY, Presiding Judge.**

**{¶1}** Defendant-appellant Hydeia Fields appeals her conviction for domestic violence, raising two assignments of error. First, she argues that the manifest weight of the evidence presented at trial established that she acted in self-defense when she dispensed pepper spray toward the father of her child during a confrontation at an apartment building. Second, Fields contends that the trial court erred in prohibiting her from testifying as to her awareness of the father's behavior in previous romantic relationships. But because the manifest weight of the evidence demonstrated that Fields acted offensively rather than defensively, and because any error the trial court might have made in excluding Fields's testimony was harmless, we reject Fields's arguments and affirm her conviction.

**{¶2}** Nonetheless, an error did occur with respect to Fields's sentence. The trial court imposed a fine in its sentencing entry that it remitted at the sentencing hearing. We therefore sua sponte reverse the imposition of the fine and remand the matter to the trial court to correct its sentencing entry.

### *Factual and Procedural History*

**{¶3}** On January 15, 2024, Fields was charged with one count of domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree. The charge alleged that she assaulted E.A., the father of her child. Fields timely submitted a notice of self-defense in advance of trial. *See* Crim.R. 12.2. The notice indicated that Fields planned to pursue a self-defense defense at trial. It did not set forth any prior incidents of conduct by E.A. that would be introduced in support of Fields's planned self-defense case.

**{¶4}** Fields tried her case to the trial court. The evidence at trial established that Fields and E.A. were previously in a romantic relationship. They had one child

together, and Fields retained sole legal custody after the split. On January 15, 2024, Fields dropped her daughter, age ten, off at E.A.'s mother's apartment for a visit.

{¶5} E.A. testified that he and his girlfriend B.H. went to his mother's apartment around 3:00 p.m. to bring his daughter belated Christmas gifts. Fields later began texting him. They argued and sent threatening messages to one another. At his mother's request, E.A. agreed to leave before Fields picked up their daughter to avoid a confrontation. He and B.H. were on their way out when they encountered Fields in a vestibule at the front of the apartment building.

{¶6} According to E.A., he attempted to walk around Fields, but she confronted him, saying "What's up[, E.]? What's that shit you was talking?" Fields then maced E.A. on the left side of his face and neck, causing irritation and a burning sensation. E.A. estimated that about two seconds elapsed between when he and Fields simultaneously entered the vestibule and when Fields sprayed the mace.

{¶7} E.A. testified that he went outside and called 9-1-1. When Fields emerged from the building with their daughter about five minutes later, the two adults shouted at one another. According to E.A., Fields began breaking the Christmas gifts he had just given their daughter and throwing the gifts on the ground. Fields then got into an Uber with their daughter and left. E.A. remained on the scene and received medical treatment from emergency medical personnel.

{¶8} B.H. also testified. She confirmed E.A.'s testimony regarding the confrontation with Fields in the vestibule. Like E.A., she indicated that Fields said "What's up[, E.]? What's that shit you was talking?" before spraying him with mace.

{¶9} Fields's version of events was only slightly different from E.A.'s. Testifying in her defense, Fields explained that she received a call from her daughter after dropping her off at the grandmother's apartment. The daughter shared that E.A.

had delivered Christmas gifts. This angered Fields, both because the gifts were late and because Fields felt that E.A. relegated his visits with their daughter to his mother's residence. Fields texted E.A., and the two exchanged heated messages in which they hurled threats at one another. Fields decided she would pick her daughter up from the apartment and told E.A. she would not be coming back.

{¶10} According to Fields, she arrived at the apartment complex about 45 to 60 minutes later. E.A. and B.H. happened to be on their way out of the building just as Fields was walking in. The three came face to face in the vestibule.

{¶11} Fields, who was eight to nine months pregnant at the time, testified to being startled when she looked up from her phone because she did not expect E.A. to be there. She recalled E.A.'s earlier text message that she "was going to get her ass beat." She reached for her pepper spray and dispensed the chemical in E.A.'s direction. Fields then continued past E.A. and B.H. into the building. She retrieved her daughter from the apartment and came back down. E.A. was on the phone with the 9-1-1 dispatcher at the time. Fields continued to verbally engage with E.A. while she and the child got into an Uber and left.

{¶12} The trial court found Fields guilty. It imposed a sentence of 180 days in jail, suspended 179 days, and afforded credit for one day served. The court additionally imposed one year of community control. The sentence was stayed pending appeal, conditioned upon Fields staying away from E.A.

### *Analysis*

{¶13} Fields raises two assignments of error on appeal. In the first, she contests the weight of the evidence supporting her conviction and insists the State failed to disprove her affirmative defense of self-defense beyond a reasonable doubt. In the second, she challenges the trial court's exclusion of evidence regarding her

knowledge of prior instances of violent conduct allegedly perpetrated by E.A. against other romantic partners.

### A. Self-Defense

**{¶14}** In her first assignment of error, Fields maintains that the manifest weight of the evidence established that she acted in self-defense, thereby negating her criminal liability for domestic violence.

**{¶15}** The offense of domestic violence is proscribed by R.C. 2919.25. The statute provides in pertinent part that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.25(A). On appeal, Fields does not dispute that she knowingly caused physical harm to E.A. by spraying him with pepper spray. Nor does she dispute that E.A. qualifies as a family member because they share a child. Rather, she maintains that the trial court's rejection of her affirmative defense of self-defense contravened the manifest weight of the evidence.

### 1. Standard of Review

**{¶16}** In reviewing a self-defense claim, we conduct a manifest weight analysis to determine whether the State met its burden of persuasion. *State v. Messenger*, 2022-Ohio-4562, ¶ 26. Distinct from sufficiency review, a manifest weight inquiry requires us to assess whether the trier of fact created a manifest miscarriage of justice in resolving conflicts in the evidence. *State v. Yeban*, 2024-Ohio-2545, ¶ 57 (1st Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387 (1997). We afford substantial deference to the credibility determinations of the trier of fact because the trier directly observes the witnesses who testify in the courtroom. *See State v. Glover*, 2019-Ohio-5211, ¶ 30 (1st Dist.), quoting *Barberton v. Jenney*, 2010-Ohio-2420, ¶ 20. Accordingly, reversal on manifest weight grounds is warranted "only in the exceptional

6

case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

### 2. *The Law on Self-Defense in a Nondeadly Force Case*

**{¶17}** The elements of a self-defense claim in a nondeadly force case are "(1) the defendant was not at fault in creating the altercation; (2) the defendant had reasonable grounds to believe that she was in imminent danger of bodily harm; and (3) the only way to protect herself from the danger was using force and she did not use more force than was reasonably necessary to defend herself against the imminent danger of bodily harm." *State v. Ridley*, 2022-Ohio-2561, ¶ 15 (1st Dist.). If any one of these cumulative elements is not met, the proponent's self-defense claim fails. *Id.*

**{¶18}** Under Ohio's current burden-shifting scheme, the defendant must first produce evidence that tends to support that she acted in self-defense. R.C. 2901.05(B)(1). Once the defendant satisfies this initial burden, the burden shifts to the State to disprove at least one of the elements of self-defense beyond a reasonable doubt. *Id.*; *State v. Smith*, 2020-Ohio-4976, ¶ 49 (1st Dist.).

### 3. *Analysis of the Evidence Concerning Fields's Self-Defense Claim*

**{¶19}** In announcing its decision, the trial court found that Fields was at fault in creating the situation and rejected the notion that Fields had a bona fide belief that she was in imminent danger. The trial court credited the testimony that Fields initiated a confrontation with E.A. by goading, "What's up with that shit you were talking," and macing him. The trial court accordingly rejected Fields's claim of self-defense. We scrutinize whether the weight of the evidence supports that conclusion.

**{¶20}** Of note, nearly all of the facts that emerged at trial were not in dispute. The parties agree that Fields willingly brought their daughter to E.A.'s mother's apartment for a visit and that E.A. and B.H. arrived without Fields's advance

7

knowledge to bring belated Christmas gifts. They agree that E.A. and Fields exchanged contentious text messages that day in which both threatened physical harm against one another. It is undisputed that E.A., B.H., and Fields unintentionally crossed paths in the vestibule. It is further undisputed that E.A. did not take any aggressive or threatening action towards Fields in the vestibule, nor did he make any comments to Fields before she deployed the pepper spray.

{¶21} Regarding the first element of her self-defense claim, Fields argues the State failed to disprove that she was not at fault in creating the situation. *See Ridley*, 2022-Ohio-2561, at ¶ 15 (1st Dist.). "[A] person may not provoke an assault or voluntarily enter an encounter and then claim a right of self-defense." *State v. Jackson*, 2024-Ohio-2728, ¶ 13 (1st Dist.), quoting *Smith*, 2020-Ohio-4976, at ¶ 53 (1st Dist.). Moreover, one who "willingly advance[s] toward a volatile situation" is deemed at fault for a resultant physical altercation. *Id.*, quoting *State v. Sekic*, 2011-Ohio-3978, ¶ 15 (8th Dist.).

{¶22} In arguing that the manifest weight of the evidence disproves her responsibility for the confrontation, Fields suggests that she had a right to pick up her daughter from the apartment and that her encounter with E.A. and B.H. in the vestibule occurred by happenstance. Both of these observations are true. But neither addresses the question of who was at fault for creating the affray.

{¶23} The initial element of self-defense asks whether the defendant was the initial aggressor or whether she acted to provoke violence by creating the circumstances leading up to the alleged self-defense. *See, e.g., State v. Gardner*, 2022-Ohio-381, ¶ 25 (8th Dist.) (assessing whether defendant was the initial aggressor in determining the at-fault element of self-defense); *State v. Elam*, 2022-Ohio-1895, ¶ 14 (12th Dist.) (holding that a defendant "must not be at fault in creating the situation

that gave rise to the affray" because "[a] person may not provoke an assault or voluntarily enter an encounter and then claim a right of self-defense"). At most, Fields's arguments demonstrate that she did not provoke a confrontation simply by retrieving her daughter. But this says nothing of whether she was the initial aggressor.

**{¶24}** The manifest weight of the evidence, and even Fields's own testimony, indicates that Fields acted offensively rather than defensively in spraying E.A. with mace. Merely a few seconds after entering the vestibule, she verbally confronted E.A. and deployed the pepper spray without E.A. having taken any action, verbal or otherwise, towards her. Fields herself admitted to spraying E.A. moments after encountering him.

**{¶25}** On this record, E.A.'s text messages earlier in the day are not weighty enough to justify Fields's preemptive use of force upon entering the vestibule. For one thing, as this court and others have observed, "words alone 'will not constitute sufficient provocation to incite the use of force in most situations.'" *Jackson*, 2024-Ohio-2728, at ¶ 13 (1st Dist.)*,* quoting *State v. Murray*, 2019-Ohio-5459, ¶ 32 (7th Dist.). Fields points to no other provocation outside of E.A.'s text messages to justify her decision to spray him with mace. The law generally discounts mere words as forming the lawful basis for retaliating with violence. *See id.*

**{¶26}** Even if we thought it appropriate to consider the earlier text messages in weighing whether Fields was at fault for the confrontation, doing so does not disprove Fields's responsibility. The text messages between Fields and E.A. were not introduced into the record, and as such we are unable to ascertain which person—E.A. or Fields—made the initial threat. Thus, even if the text messages are taken into account, the manifest weight of the evidence does not undermine the trial court's conclusion. Moreover, the evidence presented at trial demonstrated that Fields

initiated a physical confrontation with E.A. by spraying him with mace. The record thus supports the trial court's determination that Fields was at fault for the affray.

**{¶27}** The State need only disprove one element of a self-defense claim to carry its burden. *State v. Knuff*, 2024-Ohio-902, ¶ 191. Because the trial court's determination that Fields was at fault was not against the manifest weight of the evidence, the State met its burden in this case. We therefore need not address whether the trial court's conclusion that Fields lacked a bona fide belief that she was in danger was supported by the manifest weight of the evidence.

**{¶28}** Weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, we hold that the trial court did not clearly lose its way and create a manifest miscarriage of justice in rejecting Fields's self-defense claim. Accordingly, we overrule Fields's first assignment of error.

### B. Admission of Evidence

**{¶29}** In her second assignment of error, Fields contends that the trial court erred in preventing her from testifying to her knowledge of violent acts ostensibly perpetrated by E.A. upon his past romantic partners. She argues that this knowledge informed her state of mind when she encountered E.A. in the vestibule.

**{¶30}** At trial, Fields testified that she and E.A. had known one another for over ten years and that E.A. had had other romantic partners in that time. Defense counsel asked Fields whether E.A. had been violent with any of his past partners, prompting an objection by the State. The prosecutor argued that the defense was precluded from introducing other acts evidence under Evid.R. 404(B) because they had not provided advance notice. Defense counsel countered that the evidence was admissible to show Fields's state of mind relevant to the self-defense argument. The trial court sustained the objection.

**{¶31}** Shortly thereafter, Fields testified that she was eight to nine months pregnant and very emotional in her interactions with E.A. on the day in question. Fields attempted to revisit the excluded testimony by stating she was emotional during prior incidents with E.A. as well, prompting the State to renew its other-acts objection. Defense counsel reiterated that she was delving into the topic to show Fields's state of mind on the day in question. The prosecutor replied that Fields could testify to her state of mind, but not to alleged prior incidents of domestic violence involving E.A. The trial court agreed and sustained the objection. Fields now challenges the trial court's evidentiary rulings.

**{¶32}** A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *State v. Morris*, 2012-Ohio-2407, ¶ 19. An abuse of discretion connotes a judgment that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "[A]s the [Ohio] Supreme Court recently clarified, 'courts lack the discretion to make errors of law.'" *State v. Austin*, 2021-Ohio-3608, ¶ 5 (1st Dist.), quoting *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 39. But an error in an evidentiary ruling does not warrant reversal of the trial court's judgment unless the ruling affected the substantial rights of the complaining party. Evid.R. 103(A); *State v. Terry*, 2023-Ohio-3131, ¶ 6 (1st Dist.).

**{¶33}** Under Evid.R. 404(A), character evidence is generally inadmissible to prove action in conformity, subject to three exceptions. Relative to the victim, Evid.R. 404(A)(2) provides that "[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused . . . is admissible[.]" When character evidence is permitted, Evid.R. 405 delineates the means by which a party may prove the subject's character or trait:

(A) Reputation or opinion[.] In all cases in which evidence of

character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

(B) Specific instances of conduct[.] In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

**{¶34}** In a self-defense case, character evidence about the victim tends to comprise two categories: "(1) testimony concerning the victim [ ] offered to demonstrate defendant's state of mind at the time of the incident, and (2) testimony about the victim's character offered to prove that the victim was more likely the aggressor." *State v. Williamson*, 1996 Ohio App. LEXIS 4207, *11 (4th Dist. Sept. 12, 1996).

**{¶35}** In *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002), the Ohio Supreme Court held that Evid.R. 405(B) precludes a defendant from introducing specific instances of the victim's conduct to prove that the victim was the initial aggressor. But *Barnes* expressly refrained from addressing the first category, however, as that issue was not before the Court. *Id.* at fn. 3 ("We express no opinion here as to whether evidence of specific instances of a victim's conduct is admissible for other purposes in a self-defense case.").

**{¶36}** Nonetheless, numerous Ohio appellate courts have held that a criminal defendant *may* testify about specific instances of the victim's prior conduct to establish the defendant's state of mind. *See State v. Steinhauer*, 2014-Ohio-1981, ¶ 30 (4th Dist.) (collecting cases); *State v. Rice*, 2022-Ohio-3291, ¶ 70 (7th Dist.) (same).

This court is among them. In *State v. Wetherall*, 2002-Ohio-1613 (1st Dist.), we held that testimony offered by the accused relaying specific instances of violent conduct by the victim was properly admitted to inform the accused's state of mind at the time of the offense. *Id.* at *23-24. We subsequently reaffirmed this principle in *State v. Roth*, 2004-Ohio-374 (1st Dist.), holding that "a defendant must be allowed to present evidence of a victim's propensity for violence when the defendant is putting forth the affirmative defense of self-defense." *Id.* at ¶ 14. Of note, the defendant must know of the specific incidents at the time of the confrontation to render such testimony admissible. *Steinhauer* at ¶ 29.

**{¶37}** Viewed against this backdrop, the trial court seemingly abused its discretion in precluding Fields from testifying about prior violent conduct allegedly perpetrated by E.A. If Fields in fact intended to testify to prior incidents of conduct by E.A. that informed her state of mind as to his propensity for violence, case law would generally support the admissibility of that testimony. But the record is unclear as to what specifically Fields intended to present, because defense counsel did not proffer the excluded evidence into the record. As a result, it is difficult to definitively conclude that the excluded evidence was in fact relevant to Fields's state of mind or that she had the requisite knowledge at the time of the incident at the apartment. On the record before us, we are therefore unsure if Fields's testimony would have supported her conclusion, given that Fields did not file a Crim.R. 12.2 notice identifying the prior instances of conduct that allegedly supported her self-defense argument, nor did she proffer them into the record when the trial court sustained the State's objections.

**{¶38}** But even if E.A.'s prior conduct was relevant and Fields had knowledge of it at the time, this does not end our inquiry. We must assess whether the trial court's evidentiary error, assuming one was made, had a harmful effect on Fields's trial. *See*

*State v. Green*, 2023-Ohio-4360, ¶ 36 (3d Dist.) (directing, "a trial court's Evid.R. 405(B) ruling is subject to harmless error analysis").

**{¶39}** Under Crim.R. 52(A), "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." In order to assess whether an error was harmless, we consider (1) whether the defendant was prejudiced by the error, i.e., whether the error impacted the verdict; (2) whether the error was harmless beyond a reasonable doubt; and (3) whether the remaining evidence established the defendant's guilt beyond a reasonable doubt. *See Yeban*, 2024-Ohio-2545, at ¶ 52 (1st Dist.), citing *State v. Harris*, 2015-Ohio-166, ¶ 37.

**{¶40}** Here, any error made by the trial court in excluding evidence of prior conduct by E.A. was harmless, as there was overwhelming evidence contravening Fields's self-defense claim. *See Green* at ¶ 36. Despite exchanging threatening text messages with E.A., Fields voluntarily went to the apartment, not knowing whether E.A. was still there. When she happened to encounter E.A. in the vestibule, she acted first by taunting him, saying "What's up[, E.]? What's that shit you was talking?" and then immediately spraying him with mace. She acted offensively, not defensively.

**{¶41}** Even had Fields been permitted to testify about allegations of prior instances of violent conduct on E.A.'s part, the outcome of trial would have been the same. Fields was at fault for initiating the affray, regardless of her state of mind.

**{¶42}** We conclude that the trial court did not err to the prejudice of Fields in excluding testimony concerning prior acts ostensibly perpetrated by E.A. Fields's second assignment of error is overruled.

### C. Financial Sanctions

**{¶43}** Although not addressed by the parties, we sua sponte address an error in the judgment entry memorializing Fields's sentence. The trial court imposed

sentence as follows at the August 22, 2024 sentencing hearing:

> THE COURT: . . . All right, so 180 days, suspend 179. Credit for one. *No fine.* Court costs --
>
> . . .
>
> THE COURT: So it's going to be 180 days, 179 days suspended, credit one. *No fine*, court costs. Going to be one year Community Control, pay through. It's going to be a no contact, 10(G) stay away order. It's going to be treatment as recommended by probation department and there's no restitution.

(Emphasis added.) But in its sentencing entry, the trial court *did* impose a fine against Fields. This was clearly a clerical error.

**{¶44}** A defendant is entitled to know the sentence at the sentencing hearing. *State v. Bryan*, 2019-Ohio-2980, ¶ 12 (5th Dist.), quoting *State v. Santiago*, 2015-Ohio-1824, ¶ 19 (8th Dist.). As such, the sentence announced in open court and the sentence in the judgment entry must match. *State v. Sullivan*, 2015-Ohio-4845, ¶ 6 (1st Dist.). Here, they do not. We accordingly reverse the portion of the sentencing entry that imposes a fine and remand the cause to the trial court with instructions to issue a nunc pro tunc entry correcting the error.

### Conclusion

**{¶45}** Because the record contains credible evidence to support that Fields did not act in self-defense, and because the trial court's error in limiting Fields's testimony, if any, was harmless, we overrule her first and second assignments of error and affirm her conviction. However, because the judgment entry contains a clerical error regarding Fields's sentence, we sua sponte reverse the trial court's imposition of a fine and remand the cause to the trial court to issue a nunc pro tunc entry.

Judgment accordingly.

**ZAYAS** and **BOCK, JJ.,** concur.