[Cite as *State v. Bullock*, 2022-Ohio-925.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-210256 |
| | | C-210257 |
| Plaintiff-Appellee, | : | TRIAL NOS. B-2002309 |
| | | B-1904472 |
| vs. | : | |
| BUDDY BULLOCK, | : | |
| | | *O P I N I O N.* |
| Defendant-Appellant. | : | |

Criminal Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: March 25, 2022

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Mary Stier,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender, and *Lora Peters,* Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} After a jury trial, defendant-appellant Buddy Bullock was convicted of two counts of assault stemming from separate physical confrontations with corrections officers while he was an inmate at the Hamilton County Justice Center. The state alleged that Bullock grabbed the genitals of the officers during each confrontation. The defense argued that Bullock did not knowingly cause physical harm to the officers and that the officers' claims were made up or exaggerated to cover for their excessive use of force. Bullock has appealed, arguing in one assignment of error that his convictions were against the manifest weight of the evidence. For the reasons discussed below, the sole assignment of error is overruled and the judgments of the trial court are affirmed.

### *August 7, 2019*

{¶2} On August 7, 2019, Bullock met with Parole Officers Crawford[1] and Ashely Autry in the Hamilton County Justice Center. Bullock had been arrested for a parole violation, and the officers were there to inform Bullock that he was going to be released from jail.

{¶3} Corrections Officer Jacob Miles testified that he was asked to supervise the visit because Officers Crawford and Autry were concerned about Bullock becoming "irate." Miles testified that Bullock started cursing at the officers when Crawford told him that he would have to attend a "treatment program." Miles told Bullock three times that the officers were there to help him get released and that he needed to calm down and watch his language. Bullock then directed his anger

---

[1] Crawford's first name is not in the record.

toward Miles and started cursing at him. Miles told Bullock that he would be placed in his cell until he was released.

{¶4} Bullock responded that he was not going to get up from his seat. Miles testified that he attempted to escort Bullock back to his cell, but when he grabbed Bullock, he resisted by pulling away. Miles testified that he utilized a "takedown" to get Bullock to the ground and once they were on the ground, Bullock grabbed and squeezed his genitals. Miles testified that the pain caused his whole body to "lock up." He testified that he has hereditary angioedema and, as a result, trauma to his body can cause significant subcutaneous swelling. Miles did not undergo any medical treatment as a result of Bullock's assault, but he experienced pain in his genitals the rest of the day and went home early from work. Miles testified that Bullock also punched him in the face twice, but the punches did not make "good contact."

{¶5} The incident was recorded by surveillance video. The video did not record audio, but it shows Bullock talking with the parole officers and becoming agitated. Eventually, Miles approached Bullock, grabbed him by his left arm, and pulled him out of his chair. Bullock resisted. Miles took Bullock to the ground, landing on top of him. While Miles was on top of Bullock, Bullock reached his right hand down into the area of Miles's genitals. Because Miles's body is blocking the camera's view, the video does not show whether Bullock grabbed Miles's genitals.

{¶6} The video shows that Miles punched Bullock in the side, rolled over on top of him, and continued to punch him in the side while Bullock wrapped both of his arms around Miles's back. Another deputy arrived and grabbed Bullock's arm. Miles continued to punch Bullock in the head and body. Bullock rolled onto his stomach and put his hands over his head. Miles continued to punch Bullock while the

3

other deputy attempted to get control of Bullock's hands. Eventually, more deputies arrived and they placed Bullock in handcuffs.

{¶7}   Miles testified that he punched Bullock to cause pain, but not injury. He described the technique as "pain compliance" and testified it was an approved method in the use-of-force manual and that he was trained in the use of pain compliance at the academy. However, on cross-examination he refused to identify where in the manual it discussed pain compliance.

{¶8}   Parole Officer Autry testified that Bullock became upset with Officer Crawford and began to raise his voice and curse at the officers. Once the fight began, she and Crawford stood to the side, in accordance with Justice Center regulations. She testified that she saw Bullock grab Miles's testicles.

### *May 16, 2020*

{¶9}   On May 16, 2020, Corrections Officer Spenser Greene was working at the Justice Center when he was approached by Bullock. Greene testified that Bullock was angry and yelled at him because he had not been given dinner that night or the night before. Greene told Bullock that an officer had gone to retrieve more food, and he directed Bullock to go back to his cell and wait until food was brought to him. Bullock returned to the pod (shared common area), but did not return to his cell. Corrections Officers Ryan Neiheisel and Lee[2] entered the pod to escort Bullock to his cell.

{¶10}   Neiheisel testified that he told Bullock twice that he would not get dinner until he returned to his cell. Bullock refused and told Neiheisel to take him to "the hole." Neiheisel attempted to put Bullock in the "escort position" by grabbing his

---

[2] Lee's first name does not appear in the record.

arm. Bullock grabbed Neiheisel and a struggle ensued. Neiheisel testified that Bullock was ignoring his commands and he felt that Bullock was attempting to put him in a headlock, so he punched Bullock in the stomach. Neiheisel testified that at that point, Bullock dropped to a knee and grabbed his testicles. Neiheisel told him to let go and punched him two more times. Neiheisel and Lee got Bullock on the ground and held him there until responding officers arrived.

{¶11} Surveillance video captured most of the incident, but at the beginning of the altercation the parties were pushed up against the wall directly underneath the camera and the camera's view was partially obscured. The video shows that Bullock wrapped his right arm around Neiheisel. Lee attempted to get control of Bullock's left arm, but the camera's view of Bullock's left arm is obscured. The video shows that Neiheisel punched Bullock in the stomach three times, and then the three of them went to the ground. The struggle continued on the ground and Neiheisel punched Bullock four to five more times in the stomach.

### Sole Assignment of Error

{¶12} In his sole assignment of error, Bullock argues his convictions were against the manifest weight of the evidence because he did not knowingly cause or attempt to cause physical harm during either confrontation. He contends the testimony of the officers was contradicted by the surveillance video footage and therefore was not credible.

{¶13} In reviewing a claim that a conviction was against the manifest weight of the evidence, we review the record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact, in resolving conflicts in the evidence, "clearly lost its way and created such a

manifest miscarriage of justice that the conviction must be overturned." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.). Reversal of a conviction and a grant of a new trial should only be done in the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶14} "The trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given to the evidence presented." *State v. Carson*, 1st Dist. Hamilton No. C-180336, 2019-Ohio-4550, ¶ 16.

{¶15} Bullock was convicted of two counts of assault for knowingly causing or attempting to cause physical harm to another. *See* R.C. 2903.13(A). Both offenses were fifth-degree felonies because they occurred on the grounds of a local correctional facility, the victims were employees of the correctional facility, and Bullock was under custody in the facility subsequent to his arrest for a parole violation. *See* R.C. 2903.13(C)(4)(a).

{¶16} Regarding the August 7, 2019 incident, Bullock argues that Miles's testimony was not credible because his use of "pain compliance" techniques was not supported by any policy in the use-of-force manual, the video shows that Miles was not hit in the face as he claimed, and Miles did not seek medical treatment for the injury to his genitals despite his preexisting condition.

{¶17} It is unclear from the video whether Bullock grabbed Miles's genitals because the camera's view is blocked by Miles's body. But the video does not contradict Miles's testimony as Bullock claims. In judging Miles's credibility, the jury was free to consider that Miles may have used force that was not approved by the use-of-force manual and that Miles did not get hit in the face as he claimed. But neither of those facts formed the basis of Bullock's assault convictions. His

convictions stemmed from grabbing Miles's genitals, and the jury did not clearly lose its way in believing Miles's testimony on that point. Furthermore, despite Miles's preexisting condition, the fact that he did not seek medical treatment does not mean that he did not suffer physical harm. *See* R.C. 2901.01(A)(3) ("Physical harm to persons" is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration").

{¶18}   Bullock also argues that Officer Autry's testimony that Bullock grabbed Miles's genitals was "questionable" because Autry's view was blocked by Miles's and Bullock's bodies. The video shows that the alleged grab happened right in front of Autry and due to the positioning of Miles's and Bullock's bodies it is possible that she saw Bullock grab Miles's genitals. The jury was in the best position to judge her credibility.

{¶19}   Regarding the May 16, 2020 incident, Bullock argues that Officer Neiheisel caused the fight by grabbing him and that during the majority of the altercation Bullock tried to keep his hands underneath himself. For these reasons, he contends that he did not knowingly cause physical harm to Neiheisel.

{¶20}   The video does not show Bullock grab Neiheisel's genitals. But the video does not contradict Neiheisel's testimony as Bullock claims. Furthermore, Neiheisel grabbed Bullock after he refused multiple orders to return to his cell, and what Bullock did with his hands after he grabbed Neiheisel's genitals is irrelevant.

{¶21}   After a review of the record, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the convictions must be overturned.

### *Conclusion*

{¶22} The sole assignment of error is overruled and the judgments of the trial court are affirmed.

Judgments affirmed.

**MYERS, P.J.**, and **ZAYAS, J.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.