[Cite as *State v. Nichols*, 2025-Ohio-1515.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|                          |   |                                      |
|--------------------------|---|--------------------------------------|
| STATE OF OHIO,           | : | APPEAL NO.  C-240364                 |
|                          |   | TRIAL NO.   C/24/CRB/1994            |
| Plaintiff-Appellee,      | : |                                      |
|                          |   |                                      |
| vs.                      | : |                                      |
|                          |   | *O P I N I O N*                      |
| AIRION NICHOLS,          | : |                                      |
|                          |   |                                      |
| Defendant-Appellant.     | : |                                      |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Reversed and Appellant Discharged

Date of Judgment Entry on Appeal: April 30, 2025

*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Candace Crear*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffmann*, Assistant Public Defender, for Defendant-Appellant.

**Bock, Judge.**

**{¶1}** Tempers flared at a Chuck E. Cheese restaurant after defendant-appellant Airion Nichols reported to employees that her keys were missing. Despite her attempt to deescalate the situation, Nichols's friend physically confronted a manager. And despite her trying to diffuse that confrontation, Nichols found herself on the ground, wrestling the manager.

**{¶2}** After a bench trial, the trial court found Nichols at fault for the affray, thus defeating her self-defense claim and resulting in a conviction for misdemeanor assault. Now, on appeal, Nichols challenges the trial court's rejection of her self-defense claim, arguing that she presented sufficient evidence to establish a viable self-defense claim and that her conviction is against the manifest weight of the evidence.

**{¶3}** After a careful review of the evidence, we agree with Nichols and hold that the State failed to disprove beyond a reasonable doubt that Nichols was not at fault in creating the affray. The surveillance footage contradicts the manager's account and corroborates Nichols's testimony, showing her acting as a peacekeeper, not an instigator. We sustain Nichols's assignment of error, reverse her conviction, and discharge her from further prosecution.

### I. Factual and Procedural History

**{¶4}** The following facts are not in dispute. Nichols hosted her four-year-old child's birthday party at Chuck E. Cheese in February 2024. After the party, Nichols reported her keys missing to the manager. Nichols believed her keys were swept away during the staff's cleanup. Employees searched trash bags but came up empty-handed.

Nichols and her friend Tori Gregory[1] asked Chuck E. Cheese staff to conduct their own search. The manager agreed and directed Nichols and Gregory to the rear entrance.

{¶5} At some point, the keys reappeared. Emotions ran high. Chuck E. Cheese staff shut and locked the rear entrance. As Nichols and Gregory circled to the front entrance, both Nichols and the manager called the police. Nichols and Gregory walked through the front entrance. Gregory physically confronted the manager. Moments later, Nichols and the manager engaged in their own altercation. This is where Nichols's and the manager's stories diverge.

### *The manager's account*

{¶6} The manager spotted Nichols "pull[ing] the keys out of [her] pocket" at the rear entrance. Nichols and Gregory were agitated. Nichols "start[ed] throwing things off of our table," and the two threatened to "beat [the manager's] ass." The manager locked the restaurant's doors and called the police.

{¶7} The manager testified that when Nichols and Gregory returned to the restaurant, Gregory came up to her, got in her face, and punched her. She conceded that Nichols "dragged [Gregory] off" her and "broke up the fight" between Gregory and the manager.

{¶8} Initially, the manager testified that after her altercation with Gregory had concluded, she rushed to help two employees who "were getting hit by some of their family members." The manager testified that Nichols grabbed the manager's hair and dragged her to the ground. With the manager on the ground and her hair in Nichols's grasp, Nichols leaned over the manager. "She's hitting me, kicking me," the manager testified, "and there are now family members coming over to do the same to

---

[1] Gregory was convicted of assault. *See State v. Gregory,* Hamilton C.P. No. C24CRB1995 (June 20, 2024).

me." The manager tried breaking Nichols's grip while attempting to "push people off" of her. Police arrival ended the fight, which left the manager with "scratches" and "bruises" on her face and side.

### *The surveillance footage*

{¶9} Two surveillance cameras captured what unfolded after Nichols and Gregory returned to the restaurant's front entrance. The manager stood inside while Gregory positioned herself at the front entrance, both shouting and gesturing to each other. Nichols stood behind Gregory with one hand pressing her phone to her ear and the other, at times, tugging Gregory's arm back toward the door. Gregory charged through the gate towards the manager. Nichols followed slowly. Gregory confronted and then attacked the manager. Nichols, an employee, and two patrons intervened. Nichols pulled Gregory away as an employee restrained the manager.

{¶10} The commotion knocked Nichols to the floor, where she pushed an employee who was hovering over her. After regaining her footing, Nichols turned her attention to a scuffle to her right. With Nichols's back to the manager, the manager broke free from her employee's restraint, ran to Nichols, and tackled her from behind. The two grappled on the ground for about ten seconds before the recordings ended.

{¶11} After the footage refreshed the manager's recollection, she conceded that she broke free of an employee's restraint and ran to Nichols. But she disputed the characterization that she struck Nichols from behind. Instead, she testified that she was rushing to stop "a gentleman in all black who went to strike [her employees]." The manager insisted that she "did not hit anybody from what you saw" and was merely "trying to get two [employees] from that situation." She referenced another video, which is not in the record, that purportedly shows Gregory and Nichols teaming up against her on the floor.

*Nichols's account*

**{¶12}** Nichols's version of the events was quite different from the manager's version. The manager was "very aggressive" when Nichols asked about the keys. At the rear entrance, when an employee handed Nichols the trash bags, she spotted her keys "right at the top" and "pulled the keys out of the bag." Turning to the manager, Nichols pointed out, "I told you [that] you threw my keys in the trash can." The manager responded, "Girl, fuck you." That upset Nichols and visibly angered Gregory. Nichols admitted to "smack[ing] something off the table" at the rear entrance.

**{¶13}** As Nichols and Gregory circled to the front entrance, Nichols called the police because she sensed that Gregory and the manager were out of control and the entire situation needed calming. Gregory walked in the front entrance. Nichols "went after [Gregory]," who was "still upset." After Gregory beelined for the manager, Nichols ran after Gregory, "trying to break it up and got involved." Nichols remembered trying "to break the fight up and somebody hit me." Specifically, she spotted an employee "slamm[ing]" her father, who "has a bad hip." While helping her father, she felt "[a] grab." The next thing Nichols knew, she and the manager "ended up on the floor." Nichols testified that she defended herself but could not recall details because "everything just went blind."

**{¶14}** The State charged Nichols with misdemeanor assault in violation of R.C. 2903.13(A).

*The trial court found Nichols at fault for the affray and guilty of assault*

**{¶15}** The trial court explained that the State could disprove any element of Nichols's self-defense claim and found that her self-defense claim failed because

Nichols "was at fault."[2] Nichols was at fault the moment that she "reengaged, along with [Gregory]" after being outside of the restaurant. It found that Nichols "opted to reenter the building through another entrance." That Gregory reentered first was not relevant, according to the trial court, because Nichols testified that she "knew there was a problem" and called the police knowing Gregory and the manager were upset. While Nichols testified that she attempted "'to break it up and got involved,'" the trial court explained that "she opted to get involved in a dangerous and violent melee."

**{¶16}** The trial court found Nichols guilty of misdemeanor assault and imposed a suspended 180-day sentence.

## II. Analysis

**{¶17}** In a single assignment of error, Nichols challenges the trial court's denial of her self-defense claim for two reasons. First, Nichols argues that she satisfied her burden of producing legally sufficient evidence establishing her self-defense claim. Second, she argues that the State failed to carry its burden of disproving that Nichols acted in self-defense.

### A. Manifest-weight review

**{¶18}** We review the trial court's determination that the State disproved an element of Nichols's self-defense claim under a manifest-weight standard of review. *State v. Mitchell*, 2023-Ohio-2604, ¶ 13 (1st Dist.). The "[w]eight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Black's Law Dictionary* (6th Ed. 1990). A manifest-weight review requires this court to sit as a "thirteenth juror," review the entire record, consider witness credibility, and determine if the fact

---

[2] The State did not argue at trial, or on appeal, that Nichols could not claim self-defense because she was trespassing on the property.

finder "clearly lost its way in resolving conflicts in the evidence and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Sorrels*, 71 Ohio App.3d 162, 166 (1st Dist.1991).

**{¶19}** The Supreme Court of Ohio has identified factors to assist appellate courts in determining whether a trial court's decision is against the manifest weight of the evidence. *State v. Apanovitch*, 33 Ohio St.3d 19, 23-24 (1987), citing *State v. Mattison*, 23 Ohio App. 3d 10, 11 (8th Dist. 1985). These factors include

> whether the evidence was uncontradicted, whether a witness was impeached, what was not proved, that the reviewing court is not required to accept the incredible as true, the certainty of the evidence, the reliability of the evidence, whether a witness' testimony is self-serving, and whether the evidence is vague, uncertain, conflicting, or fragmentary.

*Id.*; *see State v. Rose,* 2024-Ohio-5689, ¶ 24 (1st Dist.).

### B. Ohio's burden-shifting self-defense framework

**{¶20}** Raising a viable self-defense claim to justify the use of force requires "evidence . . . that tends to support that the accused person used the force in self-defense." R.C. 2901.05(B)(1). The defendant bears the initial burden to present sufficient evidence demonstrating that the defendant's use of force was in self-defense. *State v. Messenger*, 2022-Ohio-4562, ¶ 25. Defendants satisfy this burden by producing evidence sufficient to permit a rational fact finder, viewing the evidence in a light most favorable to the defendant, to find all the elements of a self-defense claim. *Id.* at ¶ 25. This burden "is not a heavy one and . . . might even be satisfied through the state's own evidence." *Id.* at ¶ 22.

7

**{¶21}** If the defendant produces sufficient evidence to support a self-defense claim, the burden shifts to the State to refute the defendant's self-defense claim. *Id*. at ¶ 25; *see State v. Williams*, 2020-Ohio-5245, ¶ 7 (1st Dist.) (explaining the burden-shifting framework). At that point, the State carries the burden of disproving any element of the self-defense claim beyond a reasonable doubt. *State v. Knuff*, 2024-Ohio-902, ¶ 191.

**{¶22}** Nichols and the State marshal arguments about the sufficiency of the evidence that Nichols acted in self-defense. But the trial court prefaced its rejection of Nichols's self-defense claim with a recitation of the State's burden of "proof, beyond a reasonable doubt, in defeating a claim of self defense." That reference matters, because "the prosecution does not assume the burden of persuasion until the defendant first meets his or her burden of production." *State v. Ridley*, 2022-Ohio-2561, ¶ 19 (1st Dist.). So, when the trial court determined that the State successfully disproved Nichols's claim, it implicitly acknowledged that Nichols cleared her initial hurdle of producing legally sufficient evidence to support her self-defense claim.

**{¶23}** Because there was sufficient evidence supporting Nichols's self-defense claim, the burden shifted to the State to "prove beyond a reasonable doubt that at least one of the elements of self-defense was not met." *State v. Corrado*, 2024-Ohio-2575, ¶ 12 (1st Dist.); *see* R.C. 2901.05(B)(1). The State had the burden to persuade the factfinder to construe the facts in its favor. *State v. Shinholster*, 2024-Ohio-1606, ¶ 16 (1st Dist.), quoting *Mitchell*, 2023-Ohio-2604, at ¶ 16 (1st Dist.).

### C. Self-defense "at fault" element

**{¶24}** Nondeadly force may be used in self-defense if "(1) the defendant was not at fault in creating the altercation; (2) the defendant had reasonable grounds to believe that she was in imminent danger of bodily harm; and (3) the only way to

8

protect herself from the danger was using force and she did not use more force than was reasonably necessary to defend herself against the imminent danger of bodily harm." *Ridley*, 2022-Ohio-2561, at ¶ 15 (1st Dist.). Defendants' self-defense claims fail if the State disproves any self-defense element beyond a reasonable doubt. *State v. Smith*, 2020-Ohio-4976, ¶ 51 (1st Dist.). The trial court found that the State disproved the "at fault" element of Nichols's self-defense claim. We therefore limit our review to the "at fault" element.

**{¶25}** Self-defense is available only when the defendant was not at fault in causing the circumstances that led to the altercation. *State v. Palmer*, 2024-Ohio-539, ¶ 23. This generally means that the defendant was not the first aggressor. *Mitchell* at ¶ 19, quoting *State v. Turner*, 2007-Ohio-1346, ¶ 23 (2d Dist.), citing *State v. Robbins*, 58 Ohio St.2d 74 (1979). But this "'does not require in all situations that the [defendant] must have refrained from throwing the first punch' or a showing that the defendant played no part in creating the situation giving rise to the affray." *State v. Elam*, 2022-Ohio-1895, ¶ 14 (12th Dist.), quoting *State v. Nichols*, 2002 Ohio App. LEXIS 329, *9 (4th Dist. Jan. 22, 2002). Said differently, "[a] person may not provoke an assault or voluntarily enter an encounter and then claim a right of self-defense." *Id.*

**{¶26}** Defendants are "at fault" in causing the altercation if they knowingly and voluntarily enter a place or situation where a victim is located, or if they refuse to leave such a space. *State v. Patterson*, 2025-Ohio-280, ¶ 41 (10th Dist.), quoting *State v. Ellis*, 2012-Ohio-3586, ¶ 15 (10th Dist.); *see State v. Walker*, 2021-Ohio-2037, ¶ 19 ("Generally, a defendant, having willingly advanced toward a volatile situation cannot rely on the affirmative defense of self-defense."). Defendants also may be at fault if they used force first or when their "'wrongful' behavior provoked the assault." *Rose,*

2024-Ohio-5689, at ¶ 28 (1st Dist.), quoting *State v. Hendrickson,* 2009-Ohio-4416, ¶ 27 (4th Dist.).

### D. The video evidence corroborated Nichols's testimony

**{¶27}** Self-defense cases often come down to witness credibility. *Id.* at ¶ 26. This court generally defers to the trial court on credibility issues because it is in the "'best position to judge the credibility of the witnesses and the weight to be given to the evidence presented.'" *Id.*, quoting *State v. Bullock*, 2022-Ohio-925, ¶ 14 (1st Dist.). Here, however, video evidence existed that showed what happened at Chuck E. Cheese, allowing this court to view the circumstances surrounding the fight exactly how the trial court viewed them.

**{¶28}** Nichols emphasizes the surveillance footage and her testimony to argue that the evidence proves that she was not at fault for the altercation. She testified that she recognized Gregory's anger and followed her into the restaurant as a peacemaker. At the front of the restaurant, she "tried to grab Ms. Gregory" while on the phone with the police. The footage corroborates her testimony and confirms that Nichols did not willingly enter a volatile situation—she acted as a peacemaker by trying to prevent a fight and then attempting to diffuse it.

**{¶29}** For its part, the State relies on the manager's testimony to argue that Nichols attacked the manager. It argues that the trial court found the manager credible when it noted that she "credibly testified that she was a manager, and she was in a position to try to diffuse the situation. She attempted to do so. And [Nichols's friend], Nichols would not let that happen." The State urges this court to follow the trial court's credibility determination.

**{¶30}** But the remarks cited by the State about the manager's credibility were made by the *prosecutor* during his closing statement—not the trial court. The trial

court made no credibility determination with respect to the manager's testimony and did not rely on her testimony in finding Nichols at fault for the affray. There is no credibility finding to which this court should defer.

**{¶31}** Importantly, the surveillance footage raises doubts involving the manager's credibility. The State relies on the manager's testimony that Nichols and Gregory refused to leave, and that Nichols pulled the manager by her hair. But the surveillance footage tells a different story. It shows Nichols standing behind Gregory, holding Gregory's arm during Gregory's and the manager's shouting match. This suggests that Nichols attempted to take Gregory with her out the front door. But Gregory rushed through the gate and confronted the manager. Nichols followed slowly and broke up the fight between Gregory and the manager, causing Nichols to fall. Chaos ensued as people fell to the ground and others started fighting. Nichols, on her back, pushed someone off her. Then, once Nichols stood up, the manager tackled her from behind.

**{¶32}** After being impeached by the video footage in court, the manager conceded that she approached Nichols from behind. But she insisted that she did not hit anyone. Appellate courts are ""not required to accept the incredible as true."" *Rose,* 2024-Ohio-5689, at ¶ 24 (1st Dist.), quoting *State v. Barnes*, 2017-Ohio-383, ¶ 1 (8th Dist.), quoting *State v. Clark*, 101 Ohio App.3d 389 (8th Dist. 1995). The surveillance footage contradicted the manager's account.

**{¶33}** The evidence is clear that Gregory was the initial aggressor and at fault for the affray. She escalated the tensions when she returned to the restaurant and physically confronted the manager. The surveillance footage shows, however, that Nichols was not acting in concert with, and did not assist, Gregory. Nichols tried to remove Gregory as she escalated with the manager and intervened as a peacemaker to

break up the fight between the two without allegiance to Gregory. Her actions were consistent with a neutral peacemaker attempting to deescalate the situation.

{¶34} Under these specific set of facts, where video evidence corroborated Nichols's testimony, contradicted the manager's account of the fight, and showed that Nichols's actions were those of a peacemaker rather than an instigator, we hold that the State failed to prove beyond a reasonable doubt that Nichols was not at fault for the situation giving rise to the affray. The trial court erred when it found Nichols at fault for the affray. We sustain Nichols's assignment of error, reverse her conviction, and discharge her from further prosecution. *See State v. Montgomery*, 2015-Ohio-4652, ¶ 25 (12th Dist.).

### III. Conclusion

{¶35} We sustain Nichols's assignment of error, reverse the trial court's judgment convicting her, and discharge her.

Judgment reversed and appellant discharged.

**KINSLEY, P.J.,** and **NESTOR, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.