[Cite as *State v. Smith*, 2026-Ohio-1262.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-250216 |
| | | TRIAL NO. 24/CRB/12818 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *JUDGMENT ENTRY* |
| MELISSA SMITH, | : | |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 4/8/2026 per order of the court.**

**By:**_____
   **Administrative Judge**

[Cite as *State v. Smith*, 2026-Ohio-1262.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-250216 |
| | | TRIAL NO. 24/CRB/12818 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | |
| | | *O P I N I O N* |
| MELISSA SMITH, | : | |
| | | |
| Defendant-Appellant. | : | |


Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: April 8, 2026


*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Phoebe Cates*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Alana Van Gundy*, for Defendant-Appellant.

**Bock, Judge.**

**{¶1}** Defendant-appellant Melissa Smith appeals her conviction for disorderly conduct under R.C. 2917.11(A)(1), challenging the sufficiency and weight of the evidence. Smith argues that the evidence proved that she reacted defensively when the victim ("D.J.") hit Smith's phone out of her hand twice in a single night.

**{¶2}** We disagree and hold that the evidence proved that Smith's behavior was turbulent and recklessly caused inconvenience, alarm, and annoyance to D.J. Despite D.J. asking Smith to stop, Smith refused to stop broadcasting D.J.'s face and name on social media. Smith also blocked D.J.'s mother's driveway with her car at 2:00 a.m. and broadcast D.J.'s mother's house and address on social media. We further hold that the evidence proved that Smith recklessly caused inconvenience, alarm, and annoyance to D.J.'s mother by fighting and engaging in turbulent behavior in front of D.J.'s mother's house at 2:00 a.m.

**{¶3}** We overrule Smith's assignment of error and affirm the trial court's judgment.

## I. Factual and Procedural History

**{¶4}** Police arrested Smith and charged her with misdemeanor assault in violation of R.C. 2903.13. Before trial, Smith filed a notice of self-defense.

### A. *The State's case*

**{¶5}** At trial, D.J. testified that she and Smith "have issues" and "don't talk to each other." D.J. traced those issues back to early July 2024, when D.J. broke up a fight between Smith and D.J.'s cousin. Smith filed a police report about the incident.

**{¶6}** Later that month, D.J. arrived at Bar 29 sometime around 11:00 p.m. and encountered Smith in the parking lot. There, Smith approached D.J.'s friend and

asked for a lighter. Smith "turned on her phone" to livestream the encounter[1] on Facebook and "pointed it right in [D.J.'s] face." According to D.J., Smith was repeating D.J.'s name and that D.J.'s mother owned a daycare. At one point, Smith livestreamed D.J.'s significant other and friends.

{¶7}    When D.J. left the bar, Smith approached D.J. "with her phone pointed in [D.J.'s] face." After Smith got "so close" to D.J., she "smack[ed] the phone out of [Smith's] hand." Smith gathered her phone and "put [D.J.] right back on social media." D.J. recalled asking Smith to "get away" and asked security to "get her away from me." Smith's behavior angered D.J.

{¶8}    D.J., her significant other, and a friend went to D.J.'s mother's house, which is "less than a five-minute walk" to Smith's house. They arrived at D.J.'s mother's house around 2:00 a.m. and found Smith blocking the driveway with her car. This also angered D.J., who asked Smith to move her car multiple times. Smith refused. Instead, Smith livestreamed the encounter. During the livestream, Smith recited D.J.'s name, D.J.'s mother's name, D.J.'s mother's address, and "point[ed] her phone towards" the house. Smith told D.J. that she was at D.J.'s mother's house "to tell your mom that you smacked my phone out of my hand." D.J. recalled being "calm and collect[ed]," while Smith was "loud" and smelled of alcohol.

{¶9}    With Smith in her car and the windows down, D.J. tried to "punch [Smith] or punch the phone out of her hand." Smith got out of her car, pushed D.J., "and then it just went from there." The two "start[ed] fighting." D.J. testified, "She punched me. I punched her back. Or she pushed me, I pushed her back."

---

[1] The transcript suggests that the livestream was played at trial, but there is no recording of the livestream in the record.

{¶10} D.J.'s mother came out of the house, called 9-1-1, and yelled, "Stop, you guys." While D.J. stopped, Smith approached D.J.'s mother, who asked Smith to "back up," told Smith that the police were on their way, and accused Smith of trespassing. D.J. and Smith started "figh[ting] again." D.J. clarified that they were "tussling" and fell over garbage cans. D.J. explained that she had trouble recalling whether punches were exchanged because the incident happened a year before the trial. Smith continued livestreaming the events with her phone until the police arrived.

{¶11} Officer Koch-Hutchinson responded to the 9-1-1 call and recalled "hear[ing] plenty of screaming" as she arrived at the scene. Officer Koch-Hutchinson questioned D.J., while Officer Paddon questioned Smith. Although neither Smith nor D.J. needed medical attention, Smith was taken to a hospital. And while Smith told officers that she had called 9-1-1, Smith refused to discuss the specifics of the incident with the officers. Officer Paddon testified and described Smith's demeanor as "very aggressive," "very irate," and "very unhappy."

{¶12} At the close of the State's case, Smith moved for an acquittal under Crim.R. 29. The trial court denied her motion, but it sua sponte amended the misdemeanor assault count to misdemeanor disorderly conduct under R.C. 2917.11.

## B. *Smith's defense*

{¶13} Smith testified that she drove to D.J.'s mother's house because Smith had "a rapport" with D.J.'s mother, who cared for Smith's children. Smith wanted to inform D.J.'s mother that things were "getting out of control." Smith testified that she called 9-1-1 and began livestreaming herself when she arrived.

{¶14} After D.J. arrived home, D.J. approached Smith "and immediately started assaulting [Smith]." At the time, Smith was "outside of [the] car talking to Facebook live and 911 waiting for the officers to respond before I approached the house

[at] about 2:00 in the morning." Smith told the dispatcher[2] that D.J. was assaulting Smith. Smith testified that D.J. was "lying" during her testimony.

{¶15} Smith recalled that D.J., her significant other, and friend "jumped, beat, [and] stomped" on Smith. Smith denied having tried to hit D.J. and simply clenched her phone as she shielded her face from D.J.'s attack. Smith recalled being knocked to the ground and trying "to take cover" under her car. Smith testified that she was screaming for help as D.J. demanded Smith hand over her phone.

{¶16} Smith explained that D.J.'s mother walked out of her home and told everyone to "stop" and "[g]et off of her," to which D.J. replied, "Fuck her." When the attack ended, Smith tried to read D.J.'s license plate to the dispatcher as D.J. fled. When D.J. saw Smith reading her license plate, D.J. returned to continue the attack.

{¶17} Smith recalled that, when the attack ended, she approached D.J.'s mother, who was standing outside of her house. D.J. "shot up, ran up, and then she just began to boom, boom, boom." Smith, still on the phone with 9-1-1, narrated the attack and told the dispatcher that D.J. had "knocked [Smith] over the fucking trash cans." Smith pleaded, "[h]elp, help, help the whole damn time."

{¶18} After Smith finished testifying, the trial court pointed out that "the record can't really capture the decibel level and the physicality of [Smith's] outbursts." It described her outbursts as "substantial"[3] and suggested that Smith was experiencing "extraordinary emotional or psychological problems."

{¶19} The trial court found that "the State[] overc[a]me the defendant's motion for self-defense." And it found Smith guilty of disorderly conduct based on

---

[2] The 9-1-1 call is not in the record, despite Smith repeatedly asking her attorney to "play 911 for the Judge."

[3] During a brief recess while Officer Paddon was on the witness stand, the State informed the trial court that Smith had photographed Paddon at a previous hearing and posted it to social media. After Smith was told to delete the photograph, she reportedly "called the officer a clown."

D.J.'s and the responding officers' testimony. The trial court sentenced Smith to one day of jail and credited Smith with one day of time served.

## II. Analysis

**{¶20}** On appeal, Smith raises a single assignment of error challenging the sufficiency and weight of the evidence supporting her disorderly-conduct conviction. Smith argues that the evidence proves that she reacted defensively to D.J. approaching her and knocking her phone out of her hand. Smith also disputes whether she recklessly caused annoyance, inconvenience, or harm.

### A. *Sufficiency of the evidence*

**{¶21}** Smith asserts that her conviction is not supported by sufficient evidence. We note that Smith raised self-defense as a defense to the original assault charge and the Supreme Court of Ohio has held that in, self-defense cases, "'the state's rebuttal of a defendant's claim of self-defense' is not 'subject to review under the sufficiency-of-the-evidence standard.'" *State v. Knuff*, 2024-Ohio-902, ¶ 206, quoting *State v. Messenger*, 2022-Ohio-4562, ¶ 1.

**{¶22}** Here, however, it is unclear whether self-defense could serve as a full affirmative defense to every element of a disorderly-conduct charge. This is especially true where the State does not specify upon which conduct it bases a charge. Accordingly, we address Smith's invitation to review her conviction for both the sufficiency and the weight of the evidence.

**{¶23}** We review the sufficiency of the evidence by asking "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Johnson*, 2008-Ohio-705, ¶ 15 (1st Dist.), quoting *State v. Waddy*, 63 Ohio St.3d 424, 430 (1992).

{¶24} Although not specified by the trial court at trial or on the judge's sheet, the parties agree that Smith was convicted of disorderly conduct in violation of R.C. 2917.11(A)(1), which prohibits recklessly causing "inconvenience, annoyance, or alarm to another by . . . [e]ngaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior."

### 1. *Smith fought and engaged in turbulent behavior*

{¶25} First, the State had to prove that Smith's conduct fell within the activities proscribed by the disorderly-conduct statute—fighting, threatening harm to people or property, or "violent or turbulent behavior." R.C. 2917.11(A)(1).

{¶26} D.J. testified that Smith pushed and struck her. D.J. recalled, "She punched me. I punched her back. Or she pushed me, I pushed her back."

{¶27} Self-defense is an affirmative defense that "may exonerate an accused's *admitted use of force*." (Emphasis added.) *State v. Parrish*, 2020-Ohio-4807, ¶ 4 (1st Dist.). And fighting is an exchange of mutual blows or being "'one of two or more combatants in physical combat.'" *City of Cleveland Hts. v. Cohen*, 2015-Ohio-1636, ¶ 50 (8th Dist.), quoting *The New Lexicon Webster's Dictionary of the English Language* (Encyclopedic Ed. 1989). So, Smith's assertion of self-defense is an admission to fighting D.J., an act prohibited under R.C. 2917.11(A)(1). A rational trier of fact could have found that Smith fought D.J.

{¶28} Smith and the State appear to dispute whether her conduct amounted to turbulent behavior. Turbulent behavior is "'tumultuous behavior or unruly conduct characterized by violent disturbance or commotion.'" *Johnson*, 2008-Ohio-705, at ¶ 12 (1st Dist.), quoting *State v. Reeder*, 18 Ohio St.3d 25, 27 (1985).

{¶29} A rational trier of fact could find that Smith's behavior was "turbulent" at the bar and at D.J.'s mother's house based on D.J.'s and responding officers'

testimony. According to D.J., she has a contentious relationship with Smith. D.J. recalled being at the bar when Smith, camera in hand, shadowed D.J. and broadcast D.J.'s face and name on social media over D.J.'s objection. Despite the volatility at the bar, Smith chose to drive to D.J.'s mother's house at 2:00 a.m. and block the driveway. There, Smith refused to move her car, recited D.J.'s name and her mother's address on the livestream, and advanced towards D.J.'s mother after the fight.

**{¶30}** A rational trier of fact could find that Smith fought and that her behavior was turbulent at both the bar and D.J.'s mother's house.

### 2. *Smith recklessly caused inconvenience, annoyance, and alarm*

**{¶31}** Second, the State's evidence had to prove that Smith recklessly caused inconvenience, annoyance, or alarm to another. *See* R.C. 2917.11(A)(1). Smith maintains that the evidence failed to prove that she was reckless and, instead, reveals that she responded to D.J. with "defensive action[s]."

**{¶32}** Smith behaved recklessly if the evidence showed she acted "with heedless indifference to the consequences," and disregarded a substantial and unjustifiable risk that her behavior would likely cause a certain result. R.C. 2901.22(C). The State may prove recklessness with circumstantial evidence. *See State v. Briers*, 2025-Ohio-5727, ¶ 15.

**{¶33}** Conduct is "likely to cause a certain result" if "'there is merely good reason for expectation or belief.'" *State v. Hardman*, 2016-Ohio-498, ¶ 38 (8th Dist.), quoting *State v. Young*, 2005-Ohio-3584, ¶ 17 (8th Dist.), citing 1974 Committee Comment to R.C. 2901.22(C). In other words, the evidence must prove that Smith recognized she risked inconveniencing, annoying, or causing alarm to another person and "'proceed[ed] with a perverse disregard for it.'" *Briers* at ¶ 15, quoting *State v. Ramey*, 2012-Ohio-1015, ¶ 26 (10th Dist.). The State may prove inconvenience,

annoyance, or alarm via testimony describing "the impact of the event on another." *In re J.S.*, 2019-Ohio-35, ¶ 21 (5th Dist.).

{¶34} Viewing D.J.'s testimony in a light most favorable to the State, her testimony proved Smith recklessly caused annoyance, alarm, and inconvenience to D.J. at the bar. D.J. provided Smith notice that her behavior upset D.J.—she told her friends to ignore Smith, asked security to prohibit Smith from entering the bar, slapped Smith's phone out of her hand, and asked Smith to "get away," but Smith continued to follow D.J. and then broadcast her on social media. *See State v. Bailey*, 2002-Ohio-3133, ¶ 37 (1st Dist.) (holding that the evidence sufficed to prove that defendant's advances recklessly caused annoyance and alarm to a 16-year-old girl when he did not desist and followed her around the gym after she asked him to leave her alone). D.J.'s reactions reveal that D.J. was annoyed, alarmed, and inconvenienced. Moreover, D.J. testified that Smith's behavior was upsetting.

{¶35} And D.J.'s testimony proved that Smith recklessly caused annoyance, alarm, and inconvenience to both D.J. and D.J.'s mother at D.J.'s mother's house. Smith parked in front of D.J.'s mother's driveway at 2:00 a.m. and, despite D.J.'s reactions to Smith at the bar, continued to broadcast D.J. and D.J.'s mother's house on social media. D.J. asked Smith to move her car and hit the phone out of Smith's hand again. The responding officers and D.J. described Smith as loud, and D.J.'s mother emerged from the house in the middle of the night after Smith fought D.J. As Smith approached D.J.'s mother, D.J.'s mother asked Smith to "back up" and warned Smith that she was trespassing. A rational trier of fact could infer that Smith knew, or should have known, that her behavior at D.J.'s mother's house caused D.J. and her mother inconvenience, annoyance, and alarm.

**{¶36}** In sum, the State's evidence was sufficient to prove that Smith's turbulent behavior at the bar and at D.J.'s mother's house, as well as Smith fighting D.J. at her mother's house, caused inconvenience, alarm, and annoyance to D.J. and her mother.

## B. *Smith's conviction is not contrary to the weight of the evidence*

**{¶37}** Smith argues that her conviction is against the weight of the evidence. We may reverse a conviction as against the manifest weight of the evidence and order a new trial if we find, following an independent review of the record, that the trier of fact "'clearly lost its way in resolving conflicts in the evidence and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Nichols,* 2025-Ohio-1515, ¶ 18 (1st Dist.), quoting *State v. Sorrels*, 71 Ohio App.3d 162, 166 (1st Dist. 1991).

**{¶38}** Smith argues that the evidence proves D.J. initiated both physical confrontations when she knocked Smith's phone out of her hand. In doing so, she appears to challenge the trial court's finding that the State disproved her self-defense claim. Smith does not identify which self-defense element(s) she believes the State failed to disprove. In any event, the weight of the evidence proves that she was at fault for the affray at the bar and at D.J.'s mother's house.

**{¶39}** The State may disprove a defendant's self-defense claim by disproving any one of the self-defense elements, including that the defendant was not "at fault in causing the circumstances that led to the altercation." *Nichols* at ¶ 25. In other words, the accused cannot have been the first aggressor. *Id.* But "'[a] person may not provoke an assault or voluntarily enter an encounter and then claim a right of self-defense.'" *Id.*, quoting *State v. Elam*, 2022-Ohio-1895, ¶ 14 (12th Dist.).

**{¶40}** The trial court did not err when it afforded more weight to D.J.'s and the responding officers' testimony than to Smith's testimony. And their testimony showed that Smith provoked D.J. at the bar and then willingly advanced to a volatile situation at D.J.'s mother's house. Although we independently review the evidence, the trier of fact is in the "best position to judge the credibility of the witnesses and the weight to be given to the evidence presented." *State v. Bullock*, 2022-Ohio-925, ¶ 14 (1st Dist.). We hold that the trial court did not clearly lose its way in resolving conflicts in the evidence or create a miscarriage of justice.

**{¶41}** Because Smith's conviction for disorderly conduct is supported by sufficient evidence and the weight of the evidence, we overrule the assignment of error.

### III. Conclusion

**{¶42}** We overrule Smith's assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**KINSLEY, P.J.,** and **CROUSE, J.,** concur.