**[Cite as *State v. Adkins*, 2026-Ohio-1742.]**

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No.    31555 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| CHRISTINE ADKINS | | BARBERTON MUNICIPAL COURT COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No.    23 CRB 00362 |

DECISION AND JOURNAL ENTRY

Dated: May 13, 2026

CARR, Presiding Judge.

{¶1}    Appellant, Christine Adkins, appeals the judgment of the Barberton Municipal Court.  This Court affirms.

I.

{¶2}    This case arises out of the events that transpired after Adkins was terminated from her employment with Royce Security on February 27, 2024.  A branch manager at Royce Security's Coventry Township office informed Adkins of the decision to terminate her.  Adkins stormed out of the office, slamming doors and making loud noises along the way.  Upon investigating the situation, Royce Security officials discovered that one of the doors had been badly damaged and would need to be replaced.

{¶3}    Adkins was charged with one count of criminal damaging in relation to the incident.  The matter proceeded to a jury trial where Adkins was found guilty of the charged offense.  The

trial court ordered Adkins to serve 60 days on house arrest and five years of non-reporting probation. Adkins was also ordered to pay restitution in the amount of $3,427.27.

{¶4} On appeal, Adkins raises two assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED BY DECLINING TO TAKE JUDICIAL NOTICE
OF ADKINS['] PROFFERED WINDSPEED DATA.

{¶5} In her first assignment of error, Adkins contends that the trial court erred by failing to take judicial notice of the windspeed data on the date of the incident. This Court disagrees.

Background

{¶6} Prior to trial, Adkins filed a motion asking the trial court to take judicial notice of the windspeed in the Akron area on the date of the incident. Attached to the motion was a local climatological data report from Akron Fulton International Airport ("the weather report"). Adkins argued in the alternative that if the trial court was not inclined to take judicial notice of the windspeed data, then it could admit the weather report under one of two exceptions to the hearsay rule. Adkins argued that the report was either the record or data compilation of a public agency under Evid.R. 803(8), or a published compilation relied upon by the public under Evid.R. 803(17).

{¶7} Before hearing opening statements, the trial court allowed the parties to present arguments on the motion. Stressing that the weather conditions that day were pertinent to her defense theory, Adkins argued that the trial court was required to take judicial notice of the windspeed data pursuant to Evid.R. 201(D). The City countered that because it did not receive the windspeed data until shortly before trial, it did not have time to find an expert witness who could either rebut the information or place it in the proper context. Accordingly, argued the City, taking judicial notice of the windspeed data would result in prejudice. The parties debated the probative

value of the information. When Adkins noted that the average windspeed on the date of the incident was 12 miles per hour with gusts up to 33 miles per hour, the City responded that windspeed measurements were taken during the 54th minute of every hour at the airport, meaning that the data did not necessarily reflect the conditions at the exact time and location of the incident.

{¶8} Ultimately, the trial court ruled that it would not take judicial notice of the windspeed data, concluding that it would be best for the parties to offer testimony regarding the wind conditions given that the circumstances surrounding the door slams were "essential to an element of the alleged crime." Furthermore, with respect to the hearsay exceptions, the trial court expressed concerns regarding the authentication of the weather report given that it was not a certified copy issued by NOAA.

{¶9} At trial, the City presented the testimony of Ron Jones and John Howard, the two Royce Security officials who met with Adkins on February 27, 2024. Jones serves as a branch manager while Howard serves as the scheduling manager. The men called Adkins into Jones' office, which is on the second floor of the Royce Security facility in Coventry. During that meeting, Jones and Howard explained the basis for Adkins' termination. Adkins was asked to sign a form acknowledging her termination. Adkins became angry and refused to sign the form.

{¶10} After refusing to cooperate, Adkins was asked to leave the premises. Adkins walked out of Jones' office and slammed the door behind her. Howard testified that Adkins slammed the door "very hard." Jones testified that Adkins "pushed [the door] extremely hard into the wall." When Adkins walked downstairs, the men heard the back door to the parking lot "slam very loud[ly]" on two separate occasions. Given the nature of the noise, the men walked downstairs to investigate the situation. The men observed that "[the stopper] was completely broken, busted off. And the whole door frame was split. The dead bolt was hanging. The dead

bolt assembly was hanging out the door." The City introduced several photographs at trial showing that the wooden frame on the metal door had been split in half.

{¶11} Deputy Gary Patterson from the Summit County Sheriff's Office was dispatched to the scene. Upon approaching the Royce Security building, Adkins immediately noticed that the metal door marking the entrance was nonfunctional. Several components of the door, including the deadbolt and the stopper, had been completely destroyed. After taking written statements from Jones and Howard, Deputy Patterson drove to Adkins' home to provide her with an opportunity to make a statement. When Deputy Patterson learned that Adkins was not home, he left a door hanger indicating that he wished to speak with her. Adkins called Deputy Patterson later that day. Deputy Patterson activated his body camera when he took the call and that video was played at trial. During the call, Adkins suggested that it was windy that day.

<u>Discussion</u>

{¶12} On appeal, Adkins argues that the trial court was required to take judicial notice of the windspeed data pursuant to Evid.R. 201(D).

{¶13} A trial court's ruling with respect to judicial notice is generally reviewed for an abuse of discretion. *Eckmeyer v. McNealis*, 2016-Ohio-7276, ¶ 10 (9th Dist.). An abuse of discretion implies that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶14} Evid.R. 201 "governs only judicial notice of adjudicative facts; i.e., the facts of the case." Evid.R. 201(A). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot

reasonably be questioned." Evid.R. 201(B). Evid.R. 201(D) provides that "[a] court shall take judicial notice if requested by a party and supplied with the necessary information."

{¶15} Furthermore, Crim.R. 52(A) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." In determining whether the error has affected a substantial right, the Supreme Court of Ohio has recognized that a harmless error analysis first requires a reviewing court to determine whether the defendant suffered prejudice, meaning whether the error had an impact on the verdict. *See generally State v. Morris*, 2014-Ohio-5052, ¶ 27. A reviewing court must also consider whether the error was harmless beyond a reasonable doubt and, further, whether the remaining evidence established the defendant's guilt beyond a reasonable doubt. *Id.* at ¶ 28-29.

{¶16} Adkins has not affirmatively demonstrated that the trial court abused its discretion in this case and, even if she had, the record here reveals that any problem with the ruling was harmless. As an initial matter, the Supreme Court has recognized that a court has no obligation to take judicial notice of a fact that is either not relevant or not significant to the disposition of the case. *State ex rel. Martre v. Reed*, 2024-Ohio-1624, ¶ 14. This case does not involve a scenario where it is clear that the windspeed data was relevant, given the concerns regarding when and where the data was collected by NOAA in relation to the actual time and location of the incident. Even assuming arguendo that the trial court's judicial notice ruling was improper, the City presented overwhelming evidence in contravention of Adkins' defense theory that the damage to the door resulted from the wind conditions. *See generally State v. Fields*, 2025-Ohio-2248, ¶ 40 (5th Dist.). After being terminated, Adkins stormed out of Jones' office and slammed the door in a fit of anger. Jones and Howard subsequently heard the door to the parking lot slam on two separate occasions. As Adkins was driving away, Jones and Howard discovered that the door was

badly damaged. The trier of fact could have easily deduced that Adkins slammed the door twice and caused the damage. Under these circumstances, Adkins' first assignment of error is without merit.

{¶17} The first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

THE COURT'S RESTITUTION AWARD DID NOT REFLECT THE VICTIM'S ECONOMIC LOSSES SUFFERED DIRECTLY AND PROXIMATELY AS A RESULT OF ADKINS' OFFENSE.

{¶18} In her second assignment of error, Adkins argues that the trial court awarded an amount of restitution that exceeded the amount of economic loss suffered by the victim. This Court disagrees.

{¶19} An appellate court reviews a trial court's restitution order in a misdemeanor case for an abuse of discretion. *In re B.T.*, 2025-Ohio-4545, ¶ 7 (9th Dist.). An abuse of discretion implies that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore*, 5 Ohio St.3d at 219.

{¶20} At the restitution hearing, the City presented testimony that the door damaged during the incident needed to be replaced. Following the incident, Royce Security spent $209.27 on initial repairs so that the door could be closed on a temporary basis. The door was originally installed in 2008 and had functioned properly until the date of the incident. The City presented the testimony of a Royce Security employee who obtained two separate quotes for the cost of the replacement. The first company quoted a replacement galvanneal door at $4,230.94. The second company offered to install a smooth steel door for $3,218.00. The Royce Security employee explained that the second quote entailed the installation of a "lesser door" than had previously been in place, due to a difference in the material as well as the locking mechanism. At the close of the

hearing, Adkins contended that the City had not demonstrated that restitution was appropriate beyond the $209.27 expended for the initial repair because the City had presented no evidence of economic loss that accounted for the condition of the door at the time of the incident. The trial court rejected defense counsel's argument, noting that the evidence indicated that the door was completely functional prior to the incident and that the City had presented multiple quotes for the cost of replacement. The trial court ultimately used the lower of the two quotes for the replacement which, in addition to the initial repairs, amounted to a restitution order of $3,427.27.

{¶21} On appeal, Adkins contends that the City presented no evidence regarding why the costly replacement was necessary to bring the door back to its condition prior to the incident. Adkins further contends that the trial court's restitution order failed to account for the fair market value of the door at the time the incident occurred.

{¶22} R.C. 2929.28(A)(1) provides that a trial court may award restitution to a victim in a misdemeanor case "in an amount based on the victim's economic loss." The Supreme Court of Ohio recently held that a trial court did not abuse its discretion in relying on replacement cost to determine a victim's economic loss under circumstances where "the property's value before the damage was not readily discernable." *State v. Policano*, 2025-Ohio-2459, ¶ 2. A trial court does not abuse its discretion when its restitution award is supported by competent, credible evidence. *Id*. at ¶ 11. Similar to the circumstances here, Policano involved a scenario where the fair market value of a door that needed to be replaced was not readily available. *Id*. at ¶ 1, 16, 18. There, the Supreme Court recognized that "[t]he trial court's reliance on the front door's replacement cost was reasonable considering the evidence presented at the restitution hearing, including estimates to replace the door, pictures of the door immediately after Policano damaged it, and testimony from the owner describing its condition." *Id*. at ¶ 18.

**{¶23}** In the instant case, the trial court did not abuse its discretion in relying on the replacement cost of the door to the Royce Security facility in calculating its restitution order. In addition to his testimony about the cost of temporary repairs, the Royce Security employee testified about the condition of the door and provided two separate quotes for the replacement cost of the door. While the employee testified that the door had been installed in 2008, he admitted that he was not a "door expert[.]" Given that the City presented two separate quotes for the replacement that were introduced as exhibits at the hearing, it was Adkins' burden to present evidence establishing that those claims exceeded fair market value. *See id.* at ¶ 18. As Adkins failed to do so, we cannot say that the trial court's restitution order was unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

**{¶24}** The second assignment of error is overruled.

### III.

**{¶25}** Adkins' assignments of error are overruled. The judgment of the Barberton Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Barberton Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

STEVENSON, J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

ANDREW KARAS, Attorney at Law, for Appellant.

JENNIFER ROBERTS, Attorney at Law, for Appellee.